# In re Sedgeley Avenue.

1. An award of damages by a road jury, under the provisions of the Act of April 1st 1864, when confirmed by the court is a final judgment, and one for the payment of money, and the liability of the city is absolutely fixed thereby.

2. The Court of Quarter Sessions, although it has no power to issue the prerogative writ of mandamus has a right to issue an order to enforce such a judgment standing on its records.

3. Review of the legislation in regard to the opening of streets in the city of Philadelphia, and the assessment of damages therefor, by PAXSON, J.

January 30th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Certiorari to the Court of Quarter Sessions of *Philadelphia county:* Of January Term 1879, No. 50.

This writ was taken by the City of Philadelphia to the issuing of a writ of mandamus to the treasurer of said city, in favor of John Taylor, to the use of William Slater, for the payment of damages awarded to Taylor in the opening of Sedgeley avenue.

The proceedings were as follows: The petition of John Taylor, to the use of William Slater, sets forth that the jury appointed to assess the damages to property owners by the opening of Sedgeley avenue, by the report confirmed March 13th 1875, awarded the sum of $800 to two lots of ground marked on the plan annexed to said report in the name of John Taylor; that said Taylor is not and never has been the owner of one of said lots, the title to which was in William Slater; that said Taylor has not received the $400 damages awarded to said lot, and disclaims any right to take the

[In re Sedgeley Avenue.]

same, and that said amount remains unpaid by the city; and that petitioner was willing to take said sum as damages as the owner of said lot. The petition then prayed that the $400 awarded by said report to Taylor, with interest from the date of the confirmation of the report, should be paid to petitioner as the owner of the lot. On the 28th of September 1878, Taylor filed a petition, to the use of Slater, for a writ of mandamus execution. On October 24th 1878, the court granted a rule upon the city to show cause why a mandamus execution should not issue, and on November 2d 1878, this rule was made absolute. A writ of mandamus execution then issued to Taylor, for the use of Slater, for $400 and interest; when the city took this writ, and assigned this action for error.

*J. Howard Gendell*, Assistant City Solicitor, and *William Nelson West*, City Solicitor, for the city of Philadelphia.—The power to give judgment is not always accompanied with the power to enforce it by mandamus. It is a prerogative writ, and can only be issued by those courts from which the common-law writ can issue. The Quarter Sessions can no more issue a writ of mandamus than a justice can. It is a criminal court, and has no general common-law powers. The award of a road jury is not a judgment, and the proceeding to assess the value of the land to be taken for a street is not a suit. An action at law is a proceeding to redress a wrong already suffered. The cause of action must be complete before suit brought. An award is a mere preliminary appraisement of land. Until the land is taken no cause of action accrues to the land-owner, whose remedy is by an action of debt: City of Philadelphia *v.* Miskey, 18 P. F. Smith 49. Road damages cannot be paid by the city until an appropriation is made therefor by city councils: Act of May 13th 1856. Where payment is made by the mere authority of the award of a jury the Act of June 13th 1836 requires the payment to be "out of the county stock": Stewart *v.* County of Philadelphia, 2 Barr 340. The writ improperly requires the treasurer to pay the money: In re Kensington and Oxford Turnpike Co., 35 Leg. Int. 152.

*John J. Snare, Jacob Snare, Jr.*, and *David W. Sellers, contra.*—Prior to the Act of 1864 there were no means to compel the payment of damages in the absence of an appropriation by councils. That act made it the duty of the city to pay immediately upon the confirmation of the report. The legislature did not intend that further proceedings should be necessary to fix the liability of the city. The decree of the court, confirming the report, fixes the liability. The judgment can only be enforced by mandamus. No common-law execution would lie: Monaghan *v.* Philadelphia, 4 Casey 207; Act of April 15th 1834, Purd. Dig. 295, pl. 11. The Court of Quarter Sessions has power to issue this writ to enforce

[In re Sedgeley Avenue.]

the payment of road damages: Price *v.* County Commissioners, 1 Wheat. 1; Commonwealth *v.* Commissioners of City of Philadelphia, 2 Whart. 286; In re Lex or Mica Street, 35 Leg. Int. 182.

Mr. Justice PAXSON delivered the opinion of the court, March 3d 1879.

This was a proceeding in the court below under the Act of April 1st 1864, Pamph. L. 206, to compel the payment of the damages awarded by the jury for the opening of Sedgeley avenue. The report of the jury was filed May 2d 1874, and exceptions thereto were dismissed and report confirmed March 13th 1875. On October 24th 1878, the court below, upon petition filed, granted a rule to show cause why a writ of mandamus execution should not issue in favor of John Taylor, to the use of William Slater, the damages having been awarded to Taylor by the jury. This rule was made absolute November 2d 1878, and the writ issued the same day, in accordance with the prayer of the petition. The city sued out this writ of certiorari and assigned for error the order awarding the mandatory execution.

I do not understand the objection to be to the form of the remedy. A mandatory writ is the only means known to the law by which a municipal corporation can be compelled to pay a debt or perform a duty. The writ of fieri facias will not lie against such corporations: Monaghan *v.* The City, 4 Casey 207. If then the payment of road damages cannot be enforced against the city in this form of proceeding, it cannot be compelled at all. It is contended, however, that the Court of Quarter Sessions has not the power to issue such mandatory order, but that suit must be brought upon the award in the Common Pleas and a judgment recovered thereon. If this be so, the result must be the same in the end, as the Common Pleas can only enforce its judgment when recovered against the city in the precise manner in which the Court of Quarter Sessions is now attempting to compel payment. The effect of such a mode of proceeding would be to entail upon the city a considerable amount of additional costs in each award of road damages, and to cause vexatious and unnecessary delay to every property holder whose property has been taken by the city.

It would serve no good purpose and unnecessarily protract this opinion to review all the legislation in regard to the opening of streets and assessment of damages therefor in the city of Philadelphia. Prior to the Act of 21st April 1855, Pamph. L. 266, the payment of street damages was voluntary on the part of the city. The city might not open the street under the old system in force for many years; it was prohibited from opening a street until actual payment of the damages; and unless the damages were paid within one year, the whole proceedings fell: Act April 3d 1804, 4 Sm. Laws 198. The Act of 1855 authorized councils, whenever they

[In re Sedgeley Avenue.]

shall deem the public exigency to demand it, to order by ordinance any street upon the public plans of said city to be opened; and if the damages assessed upon such opening shall not be paid within one year, the property owner may sue the city to recover the same. The said act further provides "that security shall be given by the city to the owner for the payment of such damages before his ground shall be actually taken." This act provides, as we have seen, a summary method by which streets upon the public plans of the city may be opened, but requires security to be given as a condition precedent to the actual taking of the land, and if the damages are not paid within a year, the owner may sue therefor. There is no lapse by reason of the non-payment of the damages for a year, as there was under the Act of 1804. Nor could there be a lapse when the city had actually taken the property. The Act of 1864, under which these proceedings were instituted, provides that "when said award is confirmed by the court, the street shall forthwith be opened by the proper authorities of the city of Philadelphia, and said city shall pay to the respective owners of the property damaged, or their legal reyresentatives, the damages so assessed for said opening." The third section of said act further provides, that "when the court has confirmed the award of the jury as aforesaid, the solicitor of the city of Philadelphia shall notify the property owners benefited of the amount assessed against the property of each, and have delivered to them bills for the sum so assessed; and if said assessments are not paid within thirty days after the delivery of the bill, said solicitor shall without delay file a claim in the proper court for the amount thereof, against such property, which claim shall be a lien against the premises assessed, and shall be collected in the same manner as municipal claims are now by law collected."

It is manifest this act worked a radical change in the road law of the city of Philadelphia. For the first time authority is given to open streets without the payment of damages or giving security therefor. The command of the act is that when the award of damages is confirmed by the court "the street shall forthwith be opened." And it imposes a corresponding duty upon the city, for the succeeding sentence in the same section declares, "and said city shall pay to the respective owners of the property damaged, or their legal representatives, the damages so assessed for said opening." There is another peculiarity in the Act of 1864, viz., the finality of proceedings under it. This does not appear in any of the previous acts. Under them the assessment of damages was more in the nature of an appraisement of the value of the land provided it should be taken. It was optional with the city to take the land, and as a sequence optional with the city to pay. But in proceedings under the Act of 1864, there is a final adjudication of the whole matter   The damages are assessed against the city as the

[In re Sedgeley Avenue.]

party primarily liable to pay them.  At the same time the jury are required to assess such sum against the properties benefited as to them shall seem just.  These assessments, if not paid within thirty days, are to be filed by the city solicitor in the proper court, and are made a lien upon the respective properties.  Just here it is important to consider the effect of the confirmation of the award under the Act of 1864.  On the one hand it is contended that it amounts to a final judgment; on the other, that it is at most a mere ascertainment of the amount of damages, and is not, in any sense, a judgment.  It must be conceded that the award when confirmed is final.  The rights of all parties then become fixed.  The damages are assessed against the city as the party primarily liable to pay them.  At the same time the benefits are assessed upon adjacent properties.  These assessments, if not paid within thirty days, are to be filed by the city solicitor in the proper court, and become liens against the respective properties.  The award possesses every element of finality.  It is binding upon all the parties, and cannot be questioned collaterally in any subsequent proceeding.  It is true it is not a lien.  A judgment, however, is not necessarily a lien ; it is made so by statute.  A judgment is the decision or sentence of the law, given by a court of justice or other competent tribunal as the result of proceedings instituted therein for the redress of an injury: Bouvier Law Dict. tit. *Judgment.*  "The judgment," says Blackstone (vol. 3, p. 396), " though pronounced or awarded by judges, is not their determination or sentence, but the determination or sentence of the law.  It is the conclusion that naturally and regularly follows from the premises of law and fact, and depends not therefore on the arbitrary caprice of the judges, but on the settled and invariable principles of justice.  The judgment, in short, is the remedy prescribed by law for the redress of injuries, and the suit or action is the vehicle or means of administering it, and the language employed to express the determination of the law is, " it is considered—*consideratum est per curiam,* that the plaintiff do recover his damages, his debt, his possession and the like."  If we apply these familiar principles we have here a suit or proceeding in court, an injury to be redressed ; a party complainant and a party defendant ; a jury appointed according to law to hear the parties and decide the case upon the evidence ; and a court to revise the proceedings, correct all errors and pronounce final judgment.  It was contended, however, on the part of the city that there was no party plaintiff in whose favor final judgment can be pronounced ; that until the land is actually taken, there is no party injured within the meaning of the law.  There would be more force in this suggestion were we considering a case arising under the general road law of the state or the earlier statutes in regard to the opening of streets in Philadelphia.  But the system now in force there . is altogether peculiar.  The streets of the city of Philadelphia are laid out in

7 Norris—33

the public plans in advance of being opened, and when such plans are approved by the board of surveyors become binding upon all parties. through whose land such contemplated street passes : Act of 6th June 1871, Pamph. L. 1353.   The confirmation of the plan is notice to the property owner that at some future time his land will be taken.   In the meantime he cannot sell it to advantage, and if he improve it he does so at his own risk, for he cannot recover compensation for the subsequent loss of his improvements.   There is, therefore, an inchoate taking of his property ; for many purposes he is deprived of the use of it.   When the city commences proceedings for the actual taking of his property, and a jury has been appointed to assess his damages, it cannot be truly said that he is not a party to the proceeding and a party injured.

We are of opinion that the confirmation of the award under the Act of 1864, is a final judgment.   Moreover, it is a judgment for the payment of money.   If drawn out in form it would be that the party do recover from the city his damages, &c.   This is by reason of the present duty of the city to pay contained in the Act of 1864, and which is not to be found in any prior acts, except those relating specially to Fairmount Park.

It is contended, however, that even if a confirmed award under the Act of 1864 is a judgment, there is no power in the Court of Quarter Sessions to issue the writ of mandamus.   I concede that the Quarter Sessions cannot issue a mandamus.   It never had such power.   This writ is a high prerogative writ, and in England issued only out of the King's Bench.   In this state it issued formerly only out of the Supreme Court in which the powers of the King's Bench are lodged.   The Act of 14th June 1836, Pamph. L. 626, conferred the power upon the Courts of Common Pleas.   Under the present Constitution the power to issue it in this court fell with most of our original jurisdiction, except in the single instance of a mandamus to courts of inferior jurisdiction.   See art. 5, sect. 3. But the right to issue a mandamus, and the right of a court to enforce its own judgments are entirely different questions.   The latter right is inherent in every court, and must be presumed to exist in the absence of any legislative inhibition.   The writ issued in this case, although called a mandamus for convenience, is not so in point of fact.   It was simply an order issued by the court to enforce a judgment standing upon its records.   This is nothing new.   The payments of road damages have been made upon orders issued in the Quarter Sessions from the foundation of the government.   No other court ever had any jurisdiction.   Such orders were issued in Price *v.* The County Commissioners, 1 Whart. 1 ; Commonwealth *v.* The Commissioners, 2 Id. 286.   In each of those cases the Quarter Sessions issued its order on the county treasurer to pay ; the treasurer declined for want of funds, and an application was then made to this court to enforce the order of the court

[In re Sedgeley Avenue.]

below by mandamus. The mandamus was refused for reasons which do not concern the present contention, but no one doubted the power of the sessions to make the order. Such orders could undoubtedly have been enforced by the court in which they were made but for the reason that, as I have before stated, a confirmed award of a road jury at that time was not a judgment. Had there been a judgment upon which to base the proceeding, I see no reason why the orders in question could not have been enforced by the Quarter Sessions under the Act of 15th of April 1834, Pamph. L. 538, which provides for the enforcing of judgments against counties and townships. The 6th sect. of said act is as follows : "If the judgment shall be obtained against a county in any action or proceeding, the party entitled to the benefit of such judgment may have execution thereof as follows, and not otherwise, viz. : It shall be lawful for the court in which such judgment shall be obtained, or to which such judgment may be removed by a transcript from a justice of the peace or alderman, to issue thereon a writ commanding the commissioners of the county to cause the amount thereof, with the interest and costs, to be paid to the party entitled to the benefit of such judgment, out of any moneys unappropriated by such county, or if there be no such moneys, out of the first moneys that shall be received for the use of such county, and to enforce obedience to such writ by attachment." In Monaghan *v.* The City, *supra,* it was held that although cities are not expressly named in this act, yet they are clearly within its spirit; that a fieri facias could not be issued against the city, and that the only remedy was the mandatory writ prescribed by the Act of 1834, which must be directed to the city treasurer.

There being, as I have endeavored to show, a final judgment in the court below, is there any sufficient reason why that court may not enforce its judgment under the Act of 1834 ? It is said that to do so would change the nature of the payment; that by the 8th section of the General Road Law of 13th June 1836, Pamph. L. 555, the damages awarded by the jury are required to be paid in county stock. It is very true that Stewart *v.* The County of Philadelphia, 2 Barr 340, recognised this section of the Act of 1836 as being in force in Philadelphia at that time. It is not in force there now, so far as payment in county stock is concerned. There is now no such stock out of which such payments can be made. It was swept away by consolidation. There is now no county board, as there was prior to 1854, to issue such stocks. The bonds of the old districts were all paid, or taken up by new certificates of the loan of the city of Philadelphia. It is impossible, therefore, to pay road damages in county stock. And even if it were thought desirable to pay road damages in city loan, and the city were authorized to do so, it cannot be pretended that any act of the legislature could compel the property holder to accept such loan in payment. The

[In re Sedgeley Avenue.]

city's own promises to pay could not be made a legal tender. Such methods of paying debts are better suited to the financial genius of a Micawber than to the consideration of courts of law. The Act of 1836 did no more than authorize the county to tender county stock in payment of road damages; the claimant had the right to accept or refuse; if he accepted, he took the stock as payment; if he refused, and the city did not within the year pay in money, the proceedings fell. All this is changed. Now the liability of the city is absolutely fixed by the confirmation of the award, and she must pay in money.

It is further said, however, that the landowner must either wait until an appropriation shall be made by councils under the 4th section of the Act of 13th May 1856, Pamph. L. 568, Purd. 1288, pl. 128, or bring his action of debt in the Common Pleas, under the Act of 21st April 1855, Purd. 1287, pl. 124, Pamph. L. 266. The first objection seems entirely to overlook the plain reason why the legislature, by the Act of 1864, required the city to pay the damages upon the confirmation of the award of the jury. It is a part of our fundamental law that compensation shall be paid or secured before the property of the citizen shall be taken for public use. In view of the unsatisfactory financial condition of some of the municipal corporations of the state, this court has gone far enough, in my judgment, in holding that actual payment or security is not necessary on the part of such corporations to enable them to take private property for public use; that the taxing power in the hands of such bodies is a sufficient security; and that if the legislature provide a remedy by which the person whose property is taken may enforce his rights, it is sufficient: City of Pittsburgh *v.* Scott, 1 Barr 309; Commissioners *v.* Wood, 10 Id. 93; Yost's Report, 5 Harris 524; Keene *v.* Borough of Bristol, 2 Casey 46. Where, as by the Act of 1864, authority is given to the city to take the property of the citizen for public use forthwith upon the confirmation of the award, we can understand why the corresponding duty of payment was in the same act imposed upon the city. Nor is there any reason why the citizen whose property has been taken should be compelled to knock at the doors of councils and ask for an appropriation. They may or may not make such appropriation; or they may unreasonably delay it. His property having been taken, and his right to compensation established by the judgment of a competent tribunal, he is in a position to demand satisfaction, and it does not rest with city councils to deny it, or to delay it at their pleasure. Nor is there any sufficient reason why he should be compelled to bring an action of debt in the Common Pleas. To do so, under the Act of 1855, would necessarily involve the delay of a year. It may well be questioned, in view of the constitutional provision above cited, whether the legislature may lawfully restrain the property owner whose land has been taken without payment or

[In re Sedgeley Avenue.]

actual security, from proceeding at once to obtain satisfaction Aside from this I do not see any well founded reason in public policy why suit should be commenced in the Common Pleas. Such suit would be the merest formality. The award would be conclusive, however unjust it might happen to be. The city could not defend upon the ground that it was oppressive. The remedy for any wrong to her is in the Quarter Sessions and not elsewhere. There are other reasons why the award can best be enforced in the court in which it was rendered. An award of damages by a road jury is an award to the owner of the land, whoever he may be. Yet such owner is not always entitled to the money. The land taken may be mortgaged or otherwise encumbered. It is the duty of the city solicitor before such award is paid to examine the title of the alleged owner and procure searches against the property. It may, and often does happen that the sum awarded goes in whole or in part to the lien-creditors. The writ in controversy is grantable in the discretion of the court, and should always, as in the case in hand, go out only after a rule to show cause. This furnishes an opportunity for the court, with the aid of the city solicitor, to examine and dispose of all these delicate questions. It is no answer to this to say that the Quarter Sessions is an inferior tribunal, and that "it is a court for the trial of crimes, and has no general common-law powers." While it is true that it has not general common-law powers, it is equally true that it has had from the earliest period in this state the exclusive jurisdiction in all matters relating to the opening of roads and streets, and the assessment of damages therefor. Every question connected with this matter has always been committed to its care. The road damages throughout this state have always been paid upon its order. It has always possessed the power to make such orders as may be necessary for the proper disposition of the sum awarded as damages. I notice in this case a petition to impound a portion of the damages awarded to one of the property owners. If the Quarter Sessions has not this power, in what court is it lodged, and by virtue of what Act of Assembly? I am unable to see the wisdom or the policy of the rule which would require the Quarter Sessions to hand over a portion of its unfinished business to another court for completion.

The case of the City of Philadelphia v. Miskey, 18 P. F. Smith 49, was cited as authority against the right of the court below to issue the order in question. That was a suit upon an award by a jury appointed to assess damages under the Acts of Assembly authorizing land to be taken for Fairmount Park. The Act of 14th April 1868, Pamph. L. 1083, which is a supplement to the Fairmount Park Act, provides in the tenth sect., that "whenever any report of the said commissioners shall have been confirmed by the court, the valuation made shall be forthwith payable by the city of Philadelphia." This is substantially the language of the Act of

[In re Sedgeley Avenue.]

1864, in regard to the opening of streets, but the question presented by this record was not before the court in that case, and was not considered.  It cannot be regarded as authority for what it does not decide.

In the case in hand there was no question of title.  Damages were awarded to John Taylor.  A portion of said damages was paid to him upon a prior mandatory writ issued out of the Quarter Sessions.  The present proceeding was had upon the petition of William Slater, setting forth that said damages were awarded for two lots of ground, as to one of which the said Taylor never had title, but the title to which was in the petitioner.  As the title of the latter is set out in his petition, is not denied by the city, and is expressly admitted by Taylor, it cannot be said there was any dispute about title, and we must assume the court below was satisfied of the validity of Slater's claim to the balance of the sum awarded by the jury and not paid over to Taylor.

Since the passage of the Act of 1864, it has been the practice of the Court of Quarter Sessions to issue like mandatory writs to compel the payment of road damages in the city of Philadelphia. Until recently, I never knew its power to do so denied, or even doubted.  This is not conclusive, yet it is not without weight as showing the uniform construction placed upon that act by the learned and experienced judges of that court.

The proceedings are affirmed.

SHARSWOOD, C. J., and WOODWARD and TRUNKEY, JJ., dissented.