# Franklin Street.

*Road law—Widening street—Discontinuance—Measure of damages.*

Proceedings relative to the widening of a street in the city of Philadelphia may be abandoned by the city after the appointment of viewers and the filing of a bond by the city and notice given to property owners to remove buildings, etc., allowance being made to the abutting property owners for all actual losses and expenses incident to the proceedings taken by the city.

A notice to property owners to remove buildings within ten days is not such act of dominion over the property as amounted to a taking.

As the repeal of the ordinance for widening the street left the property owner in the same situation he was in before it was passed, it follows that the revocation of the action by the board of surveys in designating the street on the city plan as of the width proposed by the widening ordinance, is not an equitable condition precedent to the right of the city to be relieved from liability as for an absolute and permanent taking, appropriation and occupancy of the land for street purposes.

Argued Dec. 14, 1899. Appeal, No. 175, Oct. Sess., 1899, by John Meighan, in the matter of the widening of Franklin street from Germantown avenue to Emlen street, from decree of Q. S. Phila. Co., dismissing exceptions to and confirming second report of the jury of view. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by RICE, P. J. W. W. PORTER, J., dissents.

Exceptions to report of road jury. Before WILTBANK, J.

It appears from the record that the jury appointed to assess damages or benefits in the case at bar reported that after a careful consideration of the premises in question and the testimony submitted, the following damages for widening of Franklin street to a further width of five feet on the south-east side of said street, extending from Germantown avenue to Emlen street, were assessed awarding to John Meighan, the appellant, among others, the sum of $4,500. The jury assessed no benefits and found the following facts in connection with this street opening:

That on December 20, 1892, an ordinance was passed providing that the department of public works be authorized to

revise the lines and grades of plan, No. 185, in the twenty-second ward. Franklin street, from Germantown avenue to Green streets, which includes the limits in the above case, is all upon plan No. 185.

On May 28, 1894, in accordance with the authority thus given, the board of surveyors revised the line of Franklin street by widening it five feet on each side from Germantown avenue to Green street. The ordinance authorizing the opening of the street was passed on December 16, 1896.

On January 8, 1897, notices were issued from the bureau of highways and served upon all the property owners on the line of the proposed improvement.

The court ordered that the city of Philadelphia have leave to file a bond in the sum of $2,000 to secure the damages caused by the opening of said street, which decree was unappealed from and unreversed. That the bond provided for by this decree was duly approved and filed and remains a record in the court.

Shortly thereafter the city advertised for bids to tear down the buildings upon the line of said improvement, and bids were received and scheduled, but no contract was awarded, because the appropriation for that kind of work had been exhausted. The result of the action aforesaid was to cause the tenants to vacate the properties above mentioned.

That subsequently the city passed an ordinance repealing so much of the ordinance approved December 16, 1896 (Ordinance 276), as authorized the opening of Franklin street on the southeast side from Germantown avenue to Emlen street.

No actual physical work has been done by the city of Philadelphia along the line of the proposed improvement, and all other proceedings in the matter have ceased, though the street still continues as plotted upon the city plan as of the increased width. The repealing ordinance was passed before the jury had heard all the testimony or reached any conclusion, but a large part of the testimony had, in fact, been heard, and claimants had been put to considerable expense. Pending the proceedings, and after the ordinance of November 12, 1897 (Ordinance 251), the city filed a petition for leave to discontinue. An answer was filed thereto, and after hearing, the petition was dismissed by the court.

Under these circumstances the jury have considered that it

was too late for the city of Philadelphia to discontinue proceedings in regard to the widening of the street which it had originally negotiated, and the assessment of damages above given is, therefore, the difference between the value of the property before Franklin street was widened on the southeast side to a further width of five feet, and the value of the property considered afterwards as if such widening had actually taken place.

Certain exceptions to this report were affirmed and the report was referred back to the jury to ascertain and report what damages, if any, were suffered by claimants in these proceedings and their abandonment. The jury filed a subsequent report in conformity with this decree of the court, awarding to John Meighan, among others, $1,239.70, to cover loss of rent on the properties, expert witness fees, counsel fee and costs.

The jury further found in a second report as follows:

The jury reaffirm the findings of fact set out in their original report, and hereby make them a part of this report, and add thereto that the board of surveyors have by resolution refused to approve the ordinance to reduce the width of Franklin street, and retain it upon the city plans of the full width of sixty feet, notwithstanding the repealing ordinance of November 12, 1897, set out in full in said prior report.

They further say that the awards as made in the present report are made upon the basis that claimants are not entitled to recover as for a taking of a part of their land, but only for their loss because of the proceedings to take thereafter abandoned. If entitled to recover as for a taking they are entitled to the sums set out in the first report with interest thereon from May 24, 1898, the date of filing said report, in accordance with the decisions in Phila. v. Dyer, 41 Pa. 463, and Haley v. Phila., 28 Leg. Int. 181.

Exceptions to the second report of the jury were dismissed and John Meighan appealed.

*Errors assigned* among others were (2) in dismissing appellant's second exception to the second report of the jury of view, which exception is as follows: " 2. Because the jury erred in not awarding to exceptant the sum of $4,500, with interest from May 24, 1898." (3) In dismissing the appellant's third exception to the second report of the jury of view, which ex-

ception is as follows: " 3. Because the jury erred in making their award to exceptant upon the basis that claimants are not entitled to recover as for a taking of a part of their land, but only for their loss because of the proceedings to take thereafter abandoned."

*Alex. Simpson, Jr.*, for appellant.—Two matters, peculiar to the city of Philadelphia, are to be steadily borne in mind in considering this appeal:

1. By section 3 of the Act of December 27, 1871, P. L. (1872) 1390, if a street is plotted on the city plans of a certain width, and the owner thereafter builds on any portion of that width, he can recover no damages therefor, though entirely ignorant of the plotting, nor can he recover damages though thus deprived of the beneficial use of his property, until the physical opening, which may, in fact, never take place: In re Plan 166, 143 Pa. 414, 423.

2. Under the acts of assembly applicable to this city, councils are powerless to put streets upon or to take them off the city plans; they can only authorize the board of surveys so to do, and the latter are not bound to obey: Act of June 6, 1871, P. L. 1353; In re Arch Street, 10 Phila. 117.

In the present proceedings, therefore, entirely aside from the general rule hereinafter to be considered under the circumstances peculiar to this city, the action of the court below is inequitable, depriving appellant, as it does, of the use of his property by the action of councils alone, with which action the board of surveys expressly refuses to concur.

Coming, then, to the consideration of the present case, we find the facts fully found in the jury's reports, and they may be briefly summarized thus:

The board of surveys, under authority of councils, places the street on the city plan of the increased width.

Councils direct its opening of the increased width after three months' notice to the owners.

The usual three months' notice is given as directed.

A rule is taken to show cause why the street should not be immediately opened on giving bond.

The court by its decree directs the immediate opening on filing the bond.

The bond is filed.

A jury is appointed to assess the damages.

The city notifies the owners to tear down their houses.

She advertises for bids for tearing them down.

By reason thereof the tenants are driven out, and the property becomes idle.

The city repeals the ordinance requiring the opening, but does not disturb the ordinance directing the placing of the street on the plan as of the increased width, and the board of surveys, by affirmative action, retain the street on the plan as of the increased width.

The city asks leave to discontinue the proceedings, and the leave is refused.

And yet by the action of the court below she is held liable not as for a taking, but as for a damage suffered without taking.

Under the admitted facts found and above stated, it seems clear that the city had gone too far to recede without appellant's consent.

Unquestionably in the case of a railroad company the entry of a bond divests the owner's title: Fries v. R. R. Co., 85 Pa. 73; Hoffman's Appeal, 118 Pa. 512; Fischer v. R. R. Co., 175 Pa. 554, and the railroad cannot discontinue the proceedings, but must pay, even though it changes its route, and has no use for the land: Beale v. Penna. R. Co., 86 Pa. 509.

Authorities can be found, as Waynesboro School District's Case, 1 Pa. C. C. 422, affirmed in Funk v. School Dist., 18 W. N. C. 447, which seem upon a casual reading to hold that a municipality has greater leeway, but the real rule, which is more consonant with reason, is given by Judge Noyes quoted in the report in Wood v. Hospital, 164 Pa. 159.

In Funk's Admrs. v. Waynesboro School Dist., supra, it was distinctly found that the school districts' acts " did not interfere with the possession of the owner."

Where, however, that possession has been disturbed, though in a seemingly trivial manner, there can be no discontinuance: Wood v. State Hospital, 164 Pa. 159.

Moreover, applying the test stated in that opinion, the case is with the appellant, for under section 7 of the Act of April 21, 1855, P. L. 264, an ordinance to open, followed by the three

months' notice, just as here given, makes the city of Philadelphia liable, though there has been no actual opening : Phila. v. Dickson, 38 Pa. 247 ; Phila. v. Dyer, 41 Pa. 463.

It is not to be forgotton that the right to abandon, given by the Act of May 16, 1891, P. L. 75, has no relevancy to these proceedings. That act does not apply to Philadelphia : Orthodox Street, 1 Pa. Dist. Rep. 37 ; Melon Street, 1 Pa. Superior Ct. 63.

The lapse of time, the entry of the bond, the steps taken resulting in our tenants being driven out, and the decree of the court of February 6, 1897, alike require that this decree should be reversed, and under the authority conferred by the Act of May 20, 1891, P. L. 101, the first report of the jury should be confirmed and the city directed to pay the damages thereby and by the second report also found, with interest from May 24, 1898, the date of filing that report.

*Chester N. Farr, Jr.*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for appellee.— Municipal corporations may at any time before taking possession of the property under completed proceedings, or before the final confirmation, recede from or discontinue the proceedings they have instituted : Dillon on Municipal Corporations, sec. 608.

This view is supported by text writers generally, (see Lewis on Eminent Domain, sec. 655, Mills on Eminent Domain, secs. 311–313, and Elliott on Roads and Streets, p. 210), and has been constantly cited with approval in cases in this state : Wood v. Hospital, 164 Pa. 159 ; Funk's Admrs. v. School Dist., 18 W. N. C. 447 ; Pittsburg City District, 2 W. & S. 320.

It is apparent from an examination of the cases in this state that the divestiture of the owner's title from which arises his right to claim damages is not in itself a bar to the corporation's discontinuance of all proceedings at a subsequent stage : Funk's Admrs. v. School Dist., supra ; Moravian Seminary v. Bethlehem, 153 Pa. 583.

This was the line of reasoning adopted by the court in Beale v. R. R. Co., 86 Pa. 509. In that case the viewers had assessed damages and the road had been located.

And these considerations also render obvious the conclusion that when the court in Wood v. Hospital, supra, speaks of such

" actual taking as invests the donee of the power with title,"
it means actual physical occupancy and use.    There was no
such occupancy in the case now being argued.    There was not
even the final assessment of damages : Keller Street, 25 W. N. C.
524.

One other question raised in the brief of the appellant re-
mains to be considered.    It is urged that because this street
remains upon the city plans of the increased width it is inequi-
table to grant this discontinuance.

It is certainly only equitable that this appellant should be
put by the city in the same position he occupied before the
original ordinance to open the street of increased width was
passed, but equally so, he cannot claim to be put in any better
position than that which he then occupied.    Prior to the passage
of the original ordinance appellant's property had plotted upon
it Franklin street as of its increased width, and had he at that
time chosen to build upon that portion of his property within
those lines he could not have recovered damages for such im-
provements had the street ever been widened.    He was, there-
fore, at that time in precisely the same position of which he
now complains, and he can scarcely with propriety insist that
he should be put in a better one.

It is respectfully submitted that the decree of the court below
should be affirmed.


OPINION BY RICE, P. J., July 26, 1900 :

The proceedings relative to the widening of Franklin street
between Germantown avenue and Emlen street, preceding the
appointment of viewers to assess the damages, are fully set
forth in their first report, and we need not incumber this
opinion with a recital of them.

On November 12, 1897, while the proceedings before the
viewers were pending, an ordinance was approved repealing so
much of the ordinance of December 16, 1896, as authorized the
opening of Franklin street on the southeast side between the
streets above named.

On December 13, 1897, the city filed a petition, upon which
the court granted a rule to show cause why it " should not be
permitted to withdraw from the condemnation proceedings, and
the appointment of the jury in the above case be set aside."

An answer was filed by the appellant and on Dceember 27 the petition was refused. In the following May the jury of view filed their report awarding the appellant and others damages as for a taking of their land. Exceptions were filed by the city, and on February 4, 1899, the court made the following order: " The exceptions of the city of Philadelphia numbered 1, 30 and 39 are dismissed, the other exceptions are sustained, and the report is referred back to the jury to ascertain and report what damages, if any, have been suffered by the claimants, or any of them, by reason of the city's proceedings and their abandonment." In due time the viewers reported, inter alia, that by reason of the city's proceedings and their abandonment the appellant had suffered damages in the sum of $1,239.70, made up of loss of rent, expert witness fees, counsel fees, costs paid on filing original petition for jury of view, and for serving notices. Exceptions were filed by the appellant which were overruled. After confirmation of this report this appeal was taken. The matters assigned for error are the overruling of these exceptions. They are fully set forth in the assignments and need not be repeated here. It is sufficient to say, that they are based on the general proposition that the city had proceeded too far to recede from its action and thereby escape liability as for a taking of the appellant's land.

The order of December 27, 1897, refusing the city's petition, and the order of February 4, 1899, sustaining the city's exceptions and referring the report back to the jury of view are not necessarily inconsistent adjudications upon the question of the city's right to discontinue the widening proceedings. The viewers had been appointed on the appellant's application not the city's, and even if the proceeding to open the street to the increased width was discontinued, he was nevertheless entitled to recover the damages he had actually sustained prior to that time. As no opinion was filed we have no means of knowing the precise reason which moved the court to refuse the petition, but it is allowable to suppose that it was because the court deemed it proper to have the damages above referred to assessed by the viewers already appointed. But be that as it may, it is clear that the order of December 27 refusing to discharge them was not such an adjudication of the appellant's right to recover full damages as for an actual taking of his land as pre-

cluded the court from re-examining the question when the report of the viewers came in, and making such order as the facts and circumstances called for.

The order of February 4, 1899, was, in legal effect, an adjudication, first, that the city had the right to abandon the proceeding to widen the street; second, that the repealing ordinance was an abandonment thereof; third, that the appellant was entitled to such damages only as he had sustained " by reason of the city's proceedings and their abandonment." The second report of viewers subsequently confirmed by the court was made on that theory. Therefore the question raised upon this appeal may be fairly stated as follows: At the time the repealing ordinance was adopted had the city the right to discontinue the proceeding to open the street to the increased width and thereupon to be relieved from liability for damages except as above stated, or had the proceedings gone so far at that time that the city was bound to take the land and pay for it, or to pay for it whether it took it or not?

It is safe to say, in general, that the courts have been careful not to lay down a rule upon this subject which will prevent municipal corporations from receding from proposed action of this kind before the landowner has obtained final judgment for his damages, unless the corporation has in the meantime taken actual possession of the land. See generally upon this subject, Elliott on Roads and Streets, 209, 280, and 2 Dillon's Mun. Corp. sec. 608. It is proper that this view should be taken. The public good, or the inability of the treasury to fairly bear the burdens, may require that it should recede, and if the landowner is fully compensated for the actual injury he has sustained, no injustice is done in permitting the municipality to do so. A careful examination of the Pennsylvania cases bearing on the question has failed to convince us that a stricter rule should be applied in the present case.

The point decided in Myers v. South Bethlehem, 149 Pa. 85 was, that a final judgment for damages for the opening of a street is conclusive, although appeals of other property owners are undisposed of, and, subsequent to the judgment, the ordinance for the opening of the street is repealed by the borough councils, and although there was no actual taking or occupation of the land. It is plain to be seen that this ruling does not

apply here. The same is true of the ruling in Philadelphia v. Dickson, 38 Pa. 247, the point of which was that a resolution of councils directing the commissioner of highways to notify a landowner that at the expiration of three months they would order the opening of a particular street through his property was such an order to open as would authorize the assessment of damages, and establish the right to sue therefor, after the expiration of one year from the confirmation of the assessment. In both of these cases the damages of the property owner had been ascertained, and the liability of the municipality therefor had been finally adjudicated; in one case by a judgment on the verdict of a jury, and in the other case by a decree confirming the report of the jury of view, which was in effect a final judgment. See Sedgeley Avenue, 88 Pa. 509.

On the other hand, it was held in Moravian Seminary v. Bethlehem, 153 Pa. 583, that it was not too late to permit the municipality to discontinue the proceedings, "on proper and adequate terms," even after the verdict of a jury on an appeal from the award of damages by the viewers. In Funk's Admr. v. Waynesboro School District, 18 W. N. C. 447 ; s. c. 4 Cent. Rep. 298, the school district had the right of immediate entry by reason of the provision of the Act of April 9, 1867, P. L. 51, pledging the funds to be raised by taxation as security "for all damages done and suffered or which shall accrue to the owner or owners of such land." It also appeared that whilst the directors had not taken actual, permanent possession of the land which interfered with the occupancy of the owner, yet they had entered prior to the view and staked off the land they intended to appropriate. It was nevertheless held that the proceedings might be discontinued even after reports of viewers and reviewers assessing damages had been confirmed nisi.

Stress is laid on the fact that the city gave its own bond conditioned for the payment of "any damages which, in any proceedings in the court of quarter sessions duly authorized by law, may be awarded and confirmed as payable by said city to the person or persons judicially ascertained to be entitled to receive the same." It is urged that the filing of this bond gave the city the right of immediate entry, which is true, but its right was no more complete than that of the school district in the Waynesboro case. Therefore the two causes cannot be dis-

tinguished upon that ground. We know of no case which holds that a right of entry is equivalent in effect to an actual entry and exclusion of the owner from the possession in precluding a municipal corporation from claiming the benefits of an abandonment of the proposed taking before final judgment for the landowner's damages.

The whole case after all depends upon the question whether or not the notice to the appellant to remove his building within ten days was such an act of dominion over the property as amounted to a "taking." The appellant's counsel concedes that there must have been an actual taking as distinguished from a right of immediate entry; his main contention is that this act followed by the removal of the appellant's tenants brought the case within the principle of Wood v. Hospital, 164 Pa. 159. But in that case it appeared in the testimony and in the petition of the trustees of the hospital, that they had entered upon and occupied the land, as they had a right to do, because by the terms of the act the state was made surety for the compensation guaranteed to the landowner by the constitution. The case was not decided, however, upon the ground that the trustees had made a "paper" appropriation of the land and had the right of entry, but upon the ground that they had taken actual possession. Chief Justice STERRETT took pains to recite the salient facts at length "for the purpose of showing" as he said, "that the action of the trustees cannot be consistently regarded in any other light than as an absolute and permanent taking, appropriation and occupancy of plaintiff's land for hospital purposes under the act of 1891; such a taking and occupancy as by operation of law invested trustees with title to the land, and divested plaintiff of every right thereto save that of compensation guaranteed by the constitution. For the payment of that, the state by express terms of the act is made surety. There is no ground whatever, for the position that defendant's entry and occupancy of the land was tentative or temporary, for the purposes of designating boundaries and initiating proceedings looking to a future aproppriation and condemnation of the same for hospital purposes. The occupancy of the defendants under the lease had terminated, and thereafter they were in possession by virtue of their taking and occupying as owners under the right of eminent domain." There

would have been strong reasons for holding that this case rules the present case, if pursuant to the notice served upon him, the appellant had removed his buildings from the strip of land proposed to be taken, or had abandoned the land to the city. But he did not obey the notice. The most that can be said is that his tenants moved out of the buildings because they apprehended that the city was about to take possession of the land. The actual possession thereupon reverted to the appellant. He never delivered and the city never entered into possession. His possession was not disturbed by any work done upon the proposed improvement, for no work was done. He was injured it is true by the removal of his tenants after the notice served upon him and the consequent loss of rents during the time his premises were vacant. For that injury he was entitled to full compensation, but we are unable to conclude that there was such a completed " taking " as debarred the city from discontinuing the proceedings upon payment of all the damages he sustained and all the expenses he had been put to. It is to be observed that no complaint is made in any of the assignments of error that the amount awarded him in the last report did not fully compensate him for all the injury he had suffered " by reason of the city's proceedings and their abandonment," assuming that the city had the right to abandon them, or that the mode in which those damages were ascertained was improper.

Franklin street of the increased width had been placed on the public plan more than two years before the adoption of the opening ordinance of December 16, 1896. It is urged that, by the act of 1871, if a street is plotted on the city plans of a certain width, and the owner thereafter builds on any portion of that width, he can recover no damages therefor, though thus deprived of the beneficial use of his property, until the physical opening, which may in fact, never take place. This may be a hardship, but it is not one which results to the plaintiff from the adoption of the opening ordinance. As the repeal of that ordinance left him in the same situation he was in before it was passed, we are not convinced that a revocation of the action of the board of surveys was an equitable condition precedent to the right of the city to be relieved from liability as for an absolute and permanent taking, appropriation and occupancy of his land for street purposes.

The order is affirmed.

WILLIAM W. PORTER, J., dissenting:

On February 4, 1897, the city of Philadelphia filed a petition setting forth that the councils had directed and that the public exigencies required the immediate opening of Franklin street to the full width, and praying for a rule upon abutting owners to show cause why, upon bond being entered, the said street should not be immediately opened. On January 8, preceding, notice was served on the claimant that at the expiration of three months from the date of the notice, the street would be opened for public use over the ground owned by him. On February 6, 1897, the prayer of the above petitioner was granted and an order made that upon the entering of bond the director of public works was "authorized and directed to immediately open said street." On February 18, 1897, the petition of the appellant for a jury of view was presented and a jury appointed. On March 8, 1897, the bond of the city was filed. On September 20, 1897, notice was served on the claimant to remove "obstruction south side of Franklin St. bet. Germantown Avenue and Emlyn St. (house) as required by law."

On December 13, 1897, a petition was presented by the city of Philadelphia, setting forth, inter alia, that the councils had repealed the ordinance as to the opening of the said street and praying that the petitioner be permitted to withdraw from the condemnation proceedings, and that the appointment of the jury be set aside. To this, answer was made by the claimant. On December 24, 1897, the petition of the city was refused.

On May 24, 1898, the report of the jury was filed, awarding the claimant and others damages for the taking of their land. Exceptions were filed by the city. On February 4, 1899, certain of the exceptions were sustained and the report was referred back to the jury " to ascertain and report what damages, if any, have been suffered by the claimants, or any of them, by reason of the city's proceedings and their abandonment." On August 11, 1899, a second report of the jury was filed awarding damages on the basis of the decree of February 4, 1899. On August 12, 1899, exceptions were filed. These were dismissed and the report of the jury confirmed on September 21, 1899. No opinion was filed by the court at the time of the making of any of the orders aforesaid. This presents an unusual condition of the record. The prayer of the petition for

leave to withdraw was, as we have seen, refused. The order of the court directing the director of public works to immediately open the street was never vacated. The city has, therefore, never been permitted to withdraw from or abandon the proceedings, unless such permission may be inferred from the decree of February 4, 1899, which does not in terms permit an abandonment.

The exceptions then sustained raised the question, whether the claimants were entitled to a recovery on the basis of a taking of the land by the city. This question could arise only in the case of an abandonment of the proceedings. But permission to abandon or withdraw had been already refused. It can scarcely be contended that the mere passage of a repealing ordinance perforce worked an abandonment or discontinuance of pending legal proceedings, in the absence of consent by the opposing litigants and in the face of a judicial order refusing the leave to discontinue. The proceedings have not, as appears by the record, been withdrawn from or discontinued by the city.

There is a more important question involved in this case. Had the city the right to withdraw from, abandon or discontinue the proceedings? Had there been a final confirmation, the right to withdraw would certainly have been gone: Funk v. Waynesboro School District, 18 W. N. C. 447; In re Sedgeley Avenue, 88 Pa. 509. It is equally certain that had the city taken actual physical possession and opened the street pending the proceedings, the right to withdraw would have been gone: Wood v. The Hospital, 146 Pa. 159. The contention of the city is that its right to discontinue or withdraw from the pending proceedings continued to the final confirmation of the report of the jury, or until there had been an actual opening of the street over the claimant's properties.

The appellant replies, (a) that the character of the proceedings is such as to vest in the city a right to immediate entry, which is equivalent to an actual taking. The burden of this contention is laid on the fact that a bond was filed at the inception of the proceedings, securing the payment of damages for the taking. Where railroad corporations exercise the right of eminent domain in the taking of the land, the filing of the bond, after a formal location of the road, has been held to divest the title of the owner of the land, although there may

have been no physical entry or actual occupation. In Fisher v. R. R. Co., 175 Pa. 554, this language is used: " The effect of the proceedings deliberately instituted by one of the defendants, including the approval and filing of the bond, appointment of viewers, etc., was to divest plaintiff's right to the possession of the land taken, and remit him to his claim for compensation, under the constitution, secured by the bond," etc. See also Beale v. Penna. R. Co., 86 Pa. 509, Davis v. R. R. Co., 114 Pa. 308, Williamsport, etc., R. R. Co. v. R. R. Co., 141 Pa. 407 and Hagner v. R. R. Co., 154 Pa. 475.

There is a marked similarity between the taking by a railroad, under statutory provision, and the taking by the municipality in this case. Some of the cases and text books suggest that greater latitude should be extended to the municipality, in respect to the effect to be given to its action in bringing proceedings to take land : Funk v. Waynesboro School District, supra. Even conceding this, it by no means follows that the effect to be given to the filing of a bond in the case of railroad corporations should differ from that given to a bond filed in similar proceedings for a similar purpose in the case of a municipal corporation. The object in both is to entitle the corporation to immediate entry upon the 'land. If the act of filing the bond works a divestiture of title in one case, why not in the other ? The city answers that the security given to the property owner is not changed by the filing of the bond. But if the bond adds nothing to the security, what purpose is there in the requisition or entry of it, save to entitle the city to immediate possession and to substitute the written obligation for the land taken.

It is to be noticed that the act of April 21, 1855, does not make the filing of a bond obligatory when proceedings are commenced. It must be filed, or the damages paid, before actual entry. The filing of the bond here was, therefore, voluntary, and vested in the city the right to immediate possession. The filing of the bond in effect converted the act of the city from a prospective taking into a contractual written obligation to pay for the land taken. I can discover no sound reason why the bond in this case should not operate in the same manner as in the case of a bond given by a railroad company to secure a right of immediate occupancy, its purpose being recited to be

"that the said street might be immediately thrown open for public use," and the course of the city being consistent with no other construction. This construction is strengthened in the present case by the course taken by the city in procuring an order of court to the director of public works to immediately open the street, in giving notice to the owner of the land to remove his house, and in advertising for bids for the demolition of the houses. Under the act of April 21, 1855, the city of Philadelphia is liable for damages which the owner of the land may sustain by reason of the opening of streets where, in accordance with the provisions of the act, an ordinance has been passed and notice given, although there has been no actual opening of the street: Philadelphia v. Dickson, 38 Pa. 247; Philadelphia v. Dyer, 41 Pa. 463. This right of recovery in the absence of a physical entry and opening would seem only to be justifiable on the ground that the proceedings themselves operate as a taking. In Funk v. Waynesboro School District, supra, the proceeding was for the taking of land for school purposes, under the act of April 9, 1867. In that case it was held that the petitioners might withdraw from the proceedings at any time before final confirmation of the report of the viewers, and in the course of the opinion by Mr. Justice GORDON it is said, that in road cases, "until the court of quarter sessions finally confirms the report of the viewers, the proceedings may be set aside or abandoned." In the case cited, the proceeding was not that taken in the case at bar, which was commenced by notice to immediately remove, pursued by the filing of a petition, the entry of a bond, an order directing the municipal officer to enter into possession, and the practical eviction of the owner's tenants. Mr. Justice GORDON quotes with approval from Dillon on Municipal Corporations, sec. 608. In the present case, the same text book, together with Elliott on Streets and Roads, 209, is cited to us. The doctrine laid down by these learned authors is thus stated by Mr. Justice MITCHELL, in Myers v. South Bethlehem, 149 Pa. 85: "All that Judge DILLON says is that the municipal corporations may at any time before taking possession under complete proceedings, or before the final confirmation, recede from or discontinue the proceedings they have instituted, and Elliott similarly says that the corporation may discontinue the proceedings before final judg-

ment." The authorities by which the doctrine is supported are founded mainly on the language of statutes, and that the doctrine is applicable to all cases in Pennsylvania, is by no means asserted or conceded in Myers v. South Bethlehem, supra.

The appellant contends further (b) that prior to confirmation there was a disturbance of the owner's possession, which deprived the city of any right she may have had to discontinue. The order requiring the director of public works to enter upon the lands of the claimant was not obeyed, nor did the owner of the land proceed, under the notice given him, to demolish the houses, nor did the city actually make a contract for their demolition. The action of the city, however, resulted in driving the tenants from the properties. It prevented the owner from making any contract for the permanent occupation of the property. The effect of it was to deprive him of all beneficial use of the property. While he was not deprived of the right of possession, pending the proceedings, his actual possession was disturbed to an extent which was not susceptible of adequate compensation by an allowance of temporary loss of rent. While the ordinance of repeal revoked the instruction to immediately open the street, the board of surveyors refused to modify the plan as adopted by them. The confirmation of the plan by the board of surveyors was notice to the property owner that at some future time his land could be taken. "In the mean time, he cannot sell it to advantage, and if he improve it, he does so at his own risk, for he cannot recover compensation for the subsequent loss of his improvements. There is, therefore, an inchoate taking of his property. For many purposes he is deprived of the use of it:" Sedgeley Avenue, 88 Pa. 509. In this aspect of the case, the city may at any time renew the proceedings and thus be permitted to experiment, until she shall obtain an award for an amount considered by the city as proper damages for the opening of the street, or payable at a time financially more convenient. In this connection, it is to be remembered that the original petition presented in this case, pursuant to the ordinance originally passed, set forth that "the public exigencies required the immediate opening of the street," and this without reference to the cost of the opening, and that it is upon this petition, unamended, that the award has been made under the direction of

the court, not on the basis of a taking, but for loss suffered by reason of the institution of the proceedings.

I am of opinion that the city should not have been permitted to withdraw from the proceedings instituted by herself either when the petition for leave was presented, or on the coming in of the first report of the jury of view. The failure of the city's officer to make a technical and physical entry on the land, pursuant to the order of the court, does not defeat the claimant's right to damages as for a taking in this proceeding, where the entry of a bond has been accompanied by a notice to remove the houses, by the ousting of the owner's tenants, and a consequent disturbance of his possession.

I would reverse the decree of the court below and confirm the award of the jury made to the claimant in the first report and reaffirmed as to amount in the second report.