From James L. Schaadt, Allentown, Pa.

---

## Veech et al. v. Connellsville.

*Municipalities—Cities of the third class—Judgment against city—Mandamus execution—Acts of April 15, 1834, and June 27, 1913.*

Notwithstanding that no appropriation has been made by the council of a third class city, under the Third Class City Act of June 27, 1913, P. L. 568, for the payment of a judgment against the city, a writ in the nature of a mandamus execution for the payment of the judgment, under section 6 of the Act of April 15, 1834, P. L. 537, will be directed to the city treasurer.

Rule for attachment. C. P. Fayette Co., March T., 1922, Execution Docket, No. 30.

*Umbel, Robinson, McKean & Williams,* for plaintiffs.

*Sterling, Higbee & Matthews,* for city treasurer.

VAN SWEARINGEN, P. J., Feb. 7, 1922.—On Nov. 17, 1916, in an action for damages to real estate by reason of a change of the grade of Ashman Avenue, in the City of Connellsville, on which certain lots of plaintiffs abutted, the jury returned a verdict in favor of plaintiffs and against the defendant city for $1800. A motion for a new trial was overruled and dismissed by the court, and, on Oct. 14, 1920, judgment was entered on the verdict, from which judgment no appeal was taken. On Dec. 21, 1921, on a petition setting forth that, although frequent demands for payment had been made, the judgment still remained unpaid, plaintiffs secured a writ in the nature of a mandamus execution, under section 6 of the Act of April 15, 1834, P. L. 537, directed to the treasurer of the city, A. O. Bixler, commanding him forthwith, upon service of

1 D. & C.

the writ upon him, to pay to plaintiffs the full amount of the judgment, with interest and costs, out of any moneys unappropriated by the city, or, if there be no such moneys, out of the first moneys that shall be received by him for the use of the city. The writ was served on the treasurer on Dec. 23, 1921, by the sheriff, who demanded payment in accordance with the terms of the writ, but payment was not made. On Jan. 17, 1922, on motion of counsel for plaintiffs, a rule was granted on the city treasurer to show cause why an attachment should not issue against him for contempt of the process of the court.

The treasurer filed an answer to the rule, wherein he set forth: "That he could not lawfully obey the said writ because, by the statute creating his office and prescribing his duties, he is prohibited from paying out of the treasury of the city any money not specifically appropriated by council, and that no appropriation has been made by council for the payment of plaintiffs' judgment. He further respectfully suggests that, under such facts, a writ of mandamus does not lie, and avers that he has not made the payment because he has been advised that he could not legally do so, that in so doing he did not mean or intend any disrespect to the court or contempt of its process, and that he was advised that such was the only course open to him to properly raise the question and have the rights of the plaintiffs and his duties in the premises decided by your honorable court." On Feb. 2, 1922, a demurrer to the treasurer's answer was filed by counsel for plaintiffs, wherein it is alleged that the answer is not sufficient in law to constitute a defence to the charge of contempt, inasmuch as "(1) No specific appropriation for the particular purpose by the city council is necessary or required to authorize its treasurer to pay a final judgment against the city, regularly rendered by a competent tribunal, which he has been commanded to pay by that tribunal; and (2) that the city treasurer would not be subject to any legal penalty for obeying the lawful process of the court."

The defendant city is a city of the third class, and at the argument it was contended by counsel for the city treasurer that, since the Act of June 27, 1913, P. L. 568, providing for the incorporation, regulation and government of cities of the third class, a mandamus does not lie against the treasurer of a third class city to compel him to pay out of the funds of the city treasury a judgment recovered against the municipality. In support of that position, attention was called to art. VIII, § 2, of the act cited, which provides that "no money shall be paid out of the city treasury unless the same shall have been previously appropriated by council to the purpose for which it is to be drawn;" art. IV, § 6, providing that "no money shall be paid out of the city treasury except upon appropriation made according to law, and on warrant drawn by the proper officer in pursuance thereof," and art. VII, § 11, which requires all warrants to be countersigned by the superintendent of the department of accounts and finance and by the city controller under section 2 of the amendatory Act of July 19, 1917, P. L. 1093. The contention of the treasurer's counsel is that the system of accounting, established by the third class city act cited, and its amendments, is conclusive and exclusive, and that no money may be paid out of the treasury of a third class city otherwise than in accordance with the requirements of the statutes relative to third class cities. It is the contention of the treasurer's counsel that the writ in a case like the present one should be directed to the city council to make the appropriation, to the proper officer to draw the warrant, and to the officials designated by law to countersign the warrant. The difficulties of such a proceeding become apparent upon a reading of the many and complex provisions of the statute, but they need not be discussed.

Veech et al. *v.* Connellsville.

By the Act of April 15, 1834, P. L. 537, relating to counties and townships and county and township officers, it is provided: "Section 6. If judgment shall be obtained against a county in any action or proceeding, the party entitled to the benefit of such judgment may have execution thereof as follows, and not otherwise, viz.: It shall be lawful for the court in which such judgment shall be obtained, or to which such judgment may be removed by transcript from a justice of the peace or alderman, to issue thereon a writ commanding the commissioners of the county to cause the amount thereof, with interest and costs, to be paid to the party entitled to the benefit of such judgment, out of any moneys unappropriated of such county, or, if there be no such moneys, out of the first moneys that shall be received for the use of such county, and to enforce obedience to such writ by attachment. Section 7. If judgment shall be obtained against a township, the like proceedings may be had to enforce payment out of the township funds according to the circumstances of the case."

In Monaghan *v.* City of Philadelphia, 28 Pa. 207, where one of the questions before the Supreme Court was as to the correct procedure to enforce the payment of a judgment against the city, it was said by Judge Knox: "The Act of April 15, 1834, provides a mode for enforcing the payment of judgments against counties and townships, and, although cities are not expressly named, yet they are clearly within the spirit of the act. . . . We are of opinion that the proper writ is the one provided by the 6th section of the Act of April 15, 1834, which should be issued to the city treasurer, whose duty it is to pay the judgments in the order in which the writs are served upon him, out of any unappropriated moneys in his hands belonging to the city, and if there is none such at the time of the service of the writ, out of the first moneys that shall come to his hands. And we are further of opinion that the command of the writ must be obeyed by the city treasurer, whether councils have or have not made an appropriation for the payment of the judgment upon which the writ has issued." In discussing the question, the court said further: "The city treasurer is the custodian of the moneys belonging to the city, and it is his duty under the law to pay the creditors of the city. The manner of making the payment and of vouching the debt to be paid is regulated by statute, but no statutory regulation or appropriation by the city councils can give a higher sanction to the liquidation of a debt than the judgment of a court of justice in pursuance of law that the debt is due and must be paid. The command of the mandatory writ is, in the words of the statute, 'to cause the amount of the judgment, with the interest and costs, to be paid to the party entitled to the benefit of such judgment, out of any moneys unappropriated of such county, or, if there be no such moneys, out of the first moneys that shall be received for the use of such county.' If this command be disregarded, it may be enforced by attachment."

Evidently what the court referred to when it said "the manner of making the payment and of vouching the debt to be paid is regulated by statute," was such provisions as are contained in section 10 of the Act of Feb. 2, 1854, P. L. 21, which was a supplement to an act incorporating the City of Philadelphia, wherein it was provided that "no money shall be drawn from the treasury of the city except the same shall have been previously appropriated by councils to the purpose for which it is drawn," in section 12 of which act it also was provided that the city controller "shall countersign all warrants on the city treasurer, and shall not suffer any appropriation made by the city councils to be overdrawn," and in section 21 of the Act of April 21, 1855, P. L. 264, which was a supplement to the act consolidating the City of Philadelphia,

1 D. & C.

wherein, after specifying that "no appropriation shall be made of the moneys of the city without an ordinance therefor, expressing the objects thereof, and the amount appropriated for each object," it was provided: "It shall be a misdemeanor in office for the controller of the city to pass, or the treasurer of the city to pay, any bill or order for any object not authorized by law." It was in 1857, after both of these acts had been passed, that the case referred to was decided, and the court said the writ "should be issued to the city treasurer," who must obey the command of the writ, "whether councils have or have not made an appropriation for the payment of the judgment upon which the writ has issued." The Act of May 23, 1874, P. L. 230, dividing the cities of the State into three classes, provided generally in section 7 that "no money shall be paid out of the city treasury except upon appropriation made by law, and warrant drawn by the proper officer in pursuance thereof. . . ." In section 35, referring especially to treasurers of third class cities, the act provided that "no money shall be drawn from the treasury of the city unless the same shall have been previously appropriated by councils to the purpose for which it is drawn." And in section 39, clause 5, it was provided that the city controller "shall countersign all warrants on the city treasurer, and shall not suffer any appropriation made by the city councils to be overdrawn." So the provisions of the Third Class City Act of June 27, 1913, P. L. 568, in the respects now under consideration, do not introduce any new features into the law.

In the Sedgeley Avenue Case, 88 Pa. 509, decided in 1879, where a writ of *certiorari* was taken to the issuing of a writ of mandamus to the treasurer of the City of Philadelphia to enforce the payment of a final judgment against the city for damages awarded in the opening of a street, the proceedings of the court below were affirmed, following Monaghan v. City of Philadelphia, 28 Pa. 207. In the same year, in City of Williamsport v. Com., 90 Pa. 498, a writ of error was taken to review the action of the lower court in making an order upon the treasurer of the City of Williamsport, directing him to pay the overdue interest on certain bonds of the city, and also a *certiorari* to the action of the lower court in granting an attachment against the treasurer for refusing to obey the order, and the Supreme Court affirmed the proceedings upon each writ. In 1894, in Com. ex rel. Harkins v. Hinkson, City Treasurer, 161 Pa. 266, a demand for the payment of a judgment against the City of Chester having been made by Hinkson upon the treasurer of the city and refused, a writ of alternative mandamus was issued to the treasurer, directing him to pay the judgment, with interest and costs, or show cause why the same should not be paid, and the Supreme Court, in a *per curiam* order, said, "The writ of mandamus was properly issued," and affirmed the order.

In each of the cases cited the writ was directed to the city treasurer, and during the period in which those cases were decided, statutory provisions were in force in the cities named very similar to those contained in the Third Class City Act of June 27, 1913, P. L. 568. No reason other than that already stated having been set up by the treasurer of the defendant city for not complying with the requirements of the writ served upon him, no other matters need be discussed. We are of opinion that the writ in this case was properly directed to the treasurer of the defendant city; that no sufficient reason has been shown by the treasurer's answer to the rule why an attachment should not issue against him for contempt of the process of the court; and that the treasurer will be amply protected by the order of this court awarding the writ in making the payment therein required of him.

Veech et al. *v.* Connellsville.

And now, Feb. 7, 1922, for the reasons stated in the opinion herewith filed, the rule for an attachment is made absolute, and it is ordered that an attachment issue against A. O. Bixler, Treasurer of the City of Connellsville, for contempt of the process of this court, unless, within twenty days from this date, he pay to plaintiffs the amount of their judgment, with interest and costs, and the costs on this proceeding for attachment.

From Luke H. Frasher, Uniontown, Pa.