Jennie Wood v. Trustees of the State Hospital for the Insane at Warren, Pennsylvania, Appellant.

*Eminent domain—Discontinuance of condemnation proceedings.*

Where there has been such an actual taking under the power of eminent domain as invests the donee of the power with title, and gives to the landowner a vested right of compensation, the former cannot be permitted to discontinue the condemnation proceedings without the consent of the latter. This rule applies not only to railroad corporations, but also to municipal and quasi-municipal corporations.

Argued May 3, 1894. Appeal, No. 488, Jan. T., 1894, by defendant, from judgment of C. P. Warren Co., March T., 1893, No. 91, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Rule for leave to discontinue condemnation proceedings, on appeal from jury of view.

From the record it appeared that defendant entered upon and took possession of plaintiff's property, and petitioned for the appointment of a jury of view. Viewers were appointed who awarded plaintiff $10,341 as damages. Defendants, being dissatisfied with the award, procured a rule for leave to discontinue the condemnation proceedings. The court discharged the rule in the following opinion, by NOYES, P. J.:

" There is no element of private profit involved in the taking of the land by the trustees of the state hospital ; practically it is taken by the state herself, the trustees being no more than her agents.

" The act of May 6, 1891, P. L. 43, under which these proceedings were had, is manifestly copied from the act of 1867, providing for the taking of land for public schools, and differs in no respect affecting the question before us from that act. The case of Funk's Admr. v. Waynesboro School District, 18 W. N. 447, is therefore fully in point and leaves no question that the formal entry upon land and marking off and designating the land to be taken does not so vest the title in the trustees as to prevent an abandonment of the proceedings.   Neither is such an abandonment prevented by the subsequent proceedings to view and assess the damages, until final judgment.   Moravian Seminary v. Bethlehem, 153 Pa. 584.   After a final judgment has been entered the rights of the parties are fixed, and there can be no abandonment: Myers v. South Bethlehem, 149 Pa. 85.

" It is earnestly contended that the petitioners are debarred from abandoning the proceedings, by reason of the confirmation of the report of the viewers by the court.   In Dillon on Municipal Corporations, § 473, the final confirmation of a report of viewers is mentioned as one of the limits of the right to discontinue the proceedings.   And there are many cases in which similar language is used.   But Judge Dillon, in the section cited, is speaking of proceedings to open streets, etc., in which the confirmation of the final report is the final act entitling the municipality to open the streets and the owner to process for the collection of his damages.

" I have been unable to find any case in which the confirmation of a report of viewers nisi, or subject to appeal, has been held to have the effect ascribed to a final judgment.   Myers v. South Bethlehem, supra, and the reasons given in that case by Mr. Justice MITCHELL, are wholly inapplicable to a confirmation or judgment, which is not final, but subject to appeal.

" The act of 1891, P. L. 43, which is the authority for these proceedings, provides that, upon the return of the report of viewers to the court, and if damages be awarded and the report be confirmed by the court, judgment shall be entered thereon,

and with the right of either party to appeal and have the right to a trial by jury, as in other cases of taking land under the right of eminent domain. The same language, except the provision for appeal, is found in the act of 1867, under which no appeal was allowed. The appeal is now given by the act of the 13th of June, 1874, and is to be taken within thirty days after the ascertainment of the damages, or the filing of the report thereof in the court, and not afterwards. These provisions are the law governing other cases referred to in the act of 1891 and are to be read into it.

" The appeal is from the report of the viewers, not from the judgment of the court, which would be absurd, since the appeal itself is to the same court by which the judgment, if ever entered, must be rendered. The meaning of the law is, that if, on the report of the viewers, it be found free from exception it shall be confirmed by the court; and if no appeal be taken within the time limited by law, judgment shall be entered thereon. Thus the confirmation of the report and the judgment are not one and the same thing, but separate and successive acts.

" In the present case the order is merely that the report be confirmed subject to the right of appeal. The regularity of the proceedings has perhaps been adjudicated, but no judgment has as yet been entered. I am of the opinion that the mere confirmation of the report subject to the right of appeal, followed by appeal in due time, does not conclude the petitioners' right to abandon the land and discontinue the proceedings.

" But it appears by the petition of the trustees for the appointment of viewers that they have not merely formally entered upon the land and marked off and designated its boundaries, but that, in pursuance of the act of assembly, they had at the time of filing the petition ' entered upon and occupied and are now occupying, for the purposes hereinbefore designated,' the land of the respondent. The purposes designated in the petition are ' necessary hospital uses and purposes ; among which uses and purposes are, in part, included the cultivation and raising of garden and farm produce, vegetables, grain and hay, and the pasturage of stock for the supply of milk, butter and meat for the use of the patients and employees in and about said hospital.'

" The auditor finds, and the evidence clearly shows, that, at the time of the inception of these proceedings, the trustees of the hospital were in possession of the farm of the respondent as her tenants by written lease, the term expiring April 1, 1893, five days before the report of the viewers was filed in court. In November, 1892, they had given notice that they would surrender the possession at the termination of the lease. In January, they resolved to take the land under the authority of the act of assembly. And February 13th the petition from which I have quoted was filed. March 31st, they settled with the respondent and paid her the rent in full to the first of April. [The auditor finds that they continued in the possession after the first of April, as they had been before, until the 22d of that month, when they gave notice to the respondent that they abandoned the same and surrendered the possession to her. From the 1st to the 22d of April, therefore, the petitioners were in the actual possession and occupation of the land under a claim of ownership, for hospital purposes, and not as tenants under the lease. The situation was the same as if the trustees, by virtue of the right of eminent. domain, had entered upon the farm of respondent, in the possession of her tenant, taken the possession from such tenant, and kept it exclusively for nearly a month, while proceedings for the assessment of damages were in progress. The situation does not appear to be affected by the fact that the trustees were themselves the tenants of Mrs. Wood, since they took so much pains to leave no doubt of their intention to terminate the relation of landlord and tenant, and to hold thereafter under the right of eminent domain.] [1]

" May the commonwealth, or any municipality or corporation to which she may delegate her powers, after entering upon land, taking actual and not merely formal possession, excluding the owner from his property and actually applying the same to the public use for which it was taken, abandon the proceedings and compel the owner to receive back his land as a complete or pro tanto satisfaction for his damages?

" In Dillon on Municipal Corporations it is said that proceedings may be abandoned ' any time before taking possession of the property under complete proceedings, or before final confirmation.' But in section 474 he says, ' it has even been held

that if the municipality deem it best to abandon the proposed work or project it may do so and discontinue proceedings although it may have taken possession of the premises.' For this, the case of Hullen v. Municipality, 11 Rob. (La.) 97, is cited, to which I have not access. I cannot therefore determine how far the statutes of Louisiana differ from that now under consideration. But Judge Dillon (section 479) states the general rule as follows: 'So it is generally held that such a party is entitled to payment when the report of the commissioners of assessment has been finally acted upon and confirmed, or when, before confirmation, the municipal authorities have taken and retained the actual use of his property.' In Funk's Administrators v. Waynesboro School District, supra, Mr. Justice GORDON is careful to notice that there had been no actual possession taken, and strongly intimates that such possession would have produced a different result. The question was not raised in Moravian Seminary v. Bethlehem, the only question there being upon the effect of an irregular judgment. In Crangle v. Harrisburg, 1 Pa. 132, it was said by Judge SERGEANT that title to land taken by the borough, under the special waterworks act, vested in the borough in fee on payment of the money. But so far as the time of the vesting of title was concerned, no such point was involved in the case, and there was no provision in the law for security, public or otherwise, which would be a sufficient reason for the ruling at all events: Keene v. Bristol, 26 Pa. 46.

" So long as compensation is provided for there is no constitutional difficulty preventing the commonwealth from providing for the taking of land for public purposes either in fee or for any less estate, permanently or temporarily, and providing for the vesting of the title and the consequent right of the owner to damages at any point in the proceedings which she may establish.

" [It appears to me, therefore, that the right of the commonwealth or its representative to withdraw from proceedings to take land for public purposes at any particular point in the proceedings must depend upon the terms of the authority granted by the sovereign, and cannot depend upon the character of the corporation or person authorized to take land, though possibly that might affect the construction of the act by which

the authority is conferred.   In all cases the land is and must be taken for public use ; it matters nothing to the owner whether it is taken by the commonwealth directly, or through some person or corporation to whom she delegates the power.   The act under which this land was taken does not fix the precise time when the title should pass out of the owner and the right of the owner to damages become fixed.   But it authorizes the taking of land in fee only, not of any less interest.   There is no authority in the law for the assessment of damages for any temporary occupation.] [2]

" It seems clear that the trustees may reserve their final action until the amount of the owner's compensation is ascertained, provided they do not permit a final judgment to be entered therefor.   But it is equally clear that there is nothing in the law which makes it obligatory upon them to await the final settlement of the damages before devoting the land to public use.   The state is expressly made security for the damages, and the act expressly authorizes the taking of possession without any qualification as to time.   If in addition to the actual possession and occupation, buildings had been pulled down, meadows plowed up, or the character of the premises otherwise materially changed, there could be no doubt that the proceedings could not be abandoned.   And although no such change has been made in this instance, there is no rule by which courts can determine what acts in addition to actually ousting the owner from his dominion over and possession of his land shall make the condemnation irrevocable.

" [Inasmuch as the commonwealth has the option to take the land irrevocably at once, or to wait until the damages have been ascertained before so doing, a reasonable regard for the rights of the citizen requires us to hold that actual possession and occupation for the public use and under the right of eminent domain vests the title in the state, and fixes the .right of the owner to compensation.   When such actual possession is taken it must be presumed that it was intended to be an absolute taking of the land for permanent use, and not, as in the case of formal entry for a survey and designation of boundaries, not followed by actual occupation, a mere declaration of intention to take in the future.   The law does not authorize a taking upon trial, but only a taking absolutely and in fee.   The trus-

tees must be held to have taken the fee in the land under the authority of the statute, or their possession is unlawful; and this, in view of the provisions of the law, it cannot be.] [3] The act of May 16, 1891, P. L. 75, § 7, does not apply to this case, but our conclusion is in harmony with the rule established by the legislature in the cases covered by that act. For it is provided that proceedings may be discontinued ' prior to the entry upon, taking, appropriation or injury to any property or materials.'

" [The rule to show cause why the prayer of the petition for leave to discontinue the proceedings for the assessment of damages should not be granted, is discharged. The rule to show cause why an issue should not be formed to determine the damages sustained by Jennie Wood, by reason of the taking of her land by the trustees of the hospital, is made absolute, and an issue is directed, in which the said Jennie Wood shall be plaintiff and the Trustees of the State Hospital for the Insane at Warren defendants; the pleadings to be in accordance with the rule of court.] " [4]

At the trial of the issue, the court, under objection and exception on part of defendant, refused to admit evidence of an abandonment by the trustees of the premises in controversy. [6, 7]

Verdict and judgment for plaintiff for $7,950.

*Errors assigned* were (1–4) portions of opinion as above; (5) in refusing prayer of petitioners for leave to discontinue; (6, 7) rulings on evidence; quoting bills of exception and portions of opinion in brackets.

*D. I. Ball* and *W. M. Lindsey*, for appellants.—It has been firmly settled in the state by a uniform line of decisions, that railroads and similar corporations which have located their right of way, may not abandon their proceedings, and that the landowner by such location has acquired a vested right to damages: Neal v. R. R., 2 Grant, 137; Wadhams v. R. R., 42 Pa. 310; R. R. v. Com., 101 Pa. 192; Beale v. R. R., 86 Pa. 509; Davis v. R. R., 114 Pa. 314; R. R. v. Ziemer, 124 Pa. 560.

But the courts have recognized a different rule as to those

public corporations whose objects are for purely public purposes : Waynesboro School District Case, 1 Pa. C. C. R. 427 ; Reg. v. Woods and Forests, Jacob Fisher's Dig. 11, 179 ; Funk v. Waynesboro School District, 18 W. N. 447 ; Myers v. South Bethlehem, 149 Pa. 85 ; Moravian Seminary v. Bethlehem, 153 Pa. 583 ; Commissioners of Washington Park, 56 N. Y. 144 ; Hullen v. Municipality, 11 Rob. 97 ; 4 Rob. 357 ; Beach on Public Corporations, 698 ; Keene v. Borough, 26 Pa. 26 ; Long v. Fuller, 68 Pa. 170 ; Dill. Mun. Corp., 3d ed. 608.

*W. D. Brown* and *W. W. Wilbur*, *W. E. Rice* with them, for appellee, cited : Act of May 8, 1867, P. L. 51 ; L. Cas. Real Prop. 485 ; Keaney v. Louisville, 4 Dana, 154 ; Grand Rapids Booming Co. v. Jarvis, 30 Mich. 308.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 1, 1894 :

One of the questions presented by this record is whether the learned court erred in discharging defendant's rule for leave to discontinue their proceeding for the assessment of damages, etc. If leave to discontinue was thus rightly refused, it follows that there was no error in proceeding with the issue to determine the amount of plaintiff's damages, nor in rejecting on the trial thereof, the offers of evidence referred to in the sixth and seventh specifications of error. These offers are to show the same facts that were urged by defendants in support of their application for leave to discontinue, etc., and were rejected for the double reason that they were irrelevant to the issue on trial and did not tend to controvert the facts showing the actual taking of plaintiff's land by defendants under the right of eminent domain, with which they were invested by the act of May 6, 1891, P. L. 43. Assuming for the present that leave to discontinue and abandon the proceedings for assessment of damages was rightly refused, it may be remarked in this connection that the record discloses no error in the trial or in the proceedings leading up thereto that would warrant a reversal of the judgment. The validity of the latter therefore hinges on the question above stated.

The act of 1891 provides that whenever the trustees of any state lunatic hospital shall desire more land for the erection of necessary buildings, or other necessary hospital uses or pur-

poses, and shall be unable to procure the same by purchase from the owners, etc., it shall be lawful for them to enter upon, mark off, occupy and use the same for said purposes, and for all damage done or suffered or which shall accrue to the owner, by reason of such taking, the state shall be security; and, on application thereto, the court of common pleas shall appoint three discreet and disinterested citizens as viewers, who, upon notice to all parties interested, shall estimate and determine what damages, if any, have been sustained and to whom payable, and make report thereof to the court; and, if damages be awarded and the report be confirmed, judgment shall be entered thereon, with the right of either party to appeal, etc., as in other cases of taking under the right of eminent domain. The act also provides, among other things, " that a fee simple title to all lands acquired under the provisions of this act shall vest in " said trustees.

As evidenced by the record of their proceedings, the first official action taken by the defendants was their resolution of January 31, 1893, wherein, after reciting their inability to agree with plaintiff for the purchase of her tract of fifty acres, more or less, adjoining the hospital lands, they resolved to forthwith, by their president and secretary, take possession of, mark off, use and occupy the same for specified hospital purposes, and authorize said officers to institute all necessary judicial proceedings for the valuation thereof, etc., in accordance with said act of 1891.

In their petition of February 13, 1893, for the appointment of viewers, after reciting the purposes for which said land was needed, the necessity for taking the same, and referring to their previous resolution to take it, they say that in pursuance thereof they " have entered upon and occupied and are now occupying " said land " for the purposes hereinbefore designated," and ask that viewers be appointed to estimate and determine the damages, etc. Viewers were accordingly appointed and reported $10,341 damages payable to the plaintiff " in whom the legal title is vested." On April 10th following, said report was " presented in open court and confirmed, subject to the right of appeal as provided by law."

The next action of the trustees was at a special meeting on April 14, 1893, when they instructed their counsel " to examine

the question whether the trustees, after having appropriated the Wood property, have power, after viewers appointed by the court have filed their award, to discontinue the proceedings and abandon the property ; and to report to the board at a meeting to be held on Friday the 21st instant."· At that meeting, in view of the opinion of their counsel, the board resolved to take an appeal, and instructed their attorney " to take such action as he sees best for the purpose of abandoning the case and surrendering the premises." On the following day the appeal was accordingly taken, and in due course resulted in a verdict in favor of plaintiff for $7,950, on which judgment was subsequently entered. In the meantime, on June 5, 1893, before the issue on the appeal was tried, the trustees petitioned the court " for leave to withdraw all proceedings and discontinue this case and pay all costs accrued thereon." In that petition, after referring to their original resolution to take, occupy and use plaintiff's land for hospital purposes under the act of 1891, they declare " that, in pursuance of such resolution, your petitioners took formal possession of said premises," etc., and on February 13, 1893, presented their petition for the appointment of viewers, etc. They also aver that they " have done no injury to said premises ; that they are desirous of withdrawing from their act appropriating and occupying said premises for hospital purposes, and have passed a resolution to that effect," etc. Afterwards an auditor, appointed for the purpose, took testimony and reported the facts to the court, so that, in disposing of the rule to show cause, the learned president of the common pleas had before him all the facts in relation to the taking and occupancy of plaintiff's land by the defendants for hospital purposes.

We have thus referred at some length to the salient facts of the case for the purpose of showing that the action of the trustees cannot be consistently regarded in any other light than as an absolute and permanent taking, appropriation and occupancy of plaintiff's land for hospital purposes under the act of 1891 ; such a taking and occupancy as by operation of law invested the trustees with title to the land, and divested plaintiff of every right thereto save that of compensation guaranteed by the constitution. For the payment of that, the state, by express terms of the act, is made surety. . There is no ground

whatever for the position that defendant's entry and occupancy of the land was tentative or temporary, for the purpose of designating boundaries and initiating proceedings looking to a future appropriation and condemnation of the same for hospital· purposes. The occupancy of the defendants under the lease had terminated, and thereafter they were in possession by virtue of their taking and occupying as owners under the right of eminent domain. They in effect so declare, in substance at least, in every step that was taken prior to their application for leave to discontinue. In that they declare, "they are desirous of withdrawing from their act appropriating and occupying said premises for hospital purposes;" and in the notice of April 22d, to plaintiff, they say, "That from this time the said trustees have no further claim upon said land, and now surrender their possession of and every claim upon said land."

If, in the face of their unequivocal acts and declarations, defendants had a right to discontinue, and had been permitted to do so, there would have been nothing to prevent them from inaugurating new proceedings, and in like manner withdrawing therefrom; and thus they might commence and abandon new proceedings from time to time with the view of obtaining an award that would be satisfactory to themselves. Corporations and others invested with the power of eminent domain should not be permitted to thus experiment with judicial proceedings for any such purpose. Whenever it clearly appears, as it does in this case, that there has been such an actual taking under the power of eminent domain, as invests the donee of the power with title, and gives to the landowner a vested right to compensation, the former should not be permitted to discontinue without the consent of the latter. Any other rule would be productive of oppression and other mischievous results.

The subject has been so fully and ably considered in the opinion of the court below that further comment is unnecessary. Neither of the specifications of error is sustained.

Judgment affirmed.