John Huckestein *v.* Allegheny City, Appellant. Sandusky Street. Allegheny City's Appeal.

|165   367|
|165   372|
165   367,
178   330
165        367
30 SC ²227

*Road law—Streets—Ordinance—Municipalities—Practice, Q. S.*

The councils of a city passed an ordinance for the change of grade of a street. This was done upon the assumption that the street was a city street and had an established grade under proceedings begun many years before. The object of the proceeding was to restore substantially the grade of the surface across some excavations made by the owner of the fee. As a matter of fact no street had ever been adopted or opened. *Held* that, as the ordinance had been passed under a wrong assumption, and as it was impossible to change a grade upon a street which had no existence, the act of the city in attempting to do so gave the landowner no right of action under the ordinance.

In such a case the city should pay the costs, counsel fees and expenses to which the landowner was subjected by reason of the proceedings under the ordinance, and the city should then be permitted to discontinue the proceedings to assess damages for the change of grade.

Argued Oct. 23, 1894. Appeals, Nos. 49 and 304, Oct. T., 1894, from decree of Q. S. Allegheny Co., June T., 1890, No. 27, and judgment of C. P. No. 1, Allegheny Co., Dec. T., 1890, No. 727. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from award of viewers.   Before STOWE, P. J.

From the record it appeared that, in 1890, the councils of
the city of Allegheny passed the following ordinance : " That
the grade on Sandusky street, from Henderson street to Bell
avenue, be and the same is hereby established as follows : Be-
ginning at the North line of Henderson street at an elevation
of two hundred and twenty-nine (229) feet above city datum ;
thence ascending seventeen and sixty-nine one hundredths
(17.69) feet per hundred for a distance of nine hundred and
forty-five (945) feet to the South line of Bell avenue, elevation
three hundred and ninety-six and seventeen one-hundredths
(396.17) feet above city datum ; and that George R. Bothwell,
Daniel T. Johnston and George W. Hubley, freeholders, be
and they are hereby appointed viewers to view the premises,
appraise the damages and make assessments of benefits on said
change of grade as provided by act of assembly, approved the
first day of April, 1870, entitled, ' An act relative to streets in
the city of Allegheny.' "

John Huckestein appealed to the quarter sessions from the
confirmation by councils of the report of viewers awarding him
no damages.   In his petition he denied that Sandusky was in
point of fact a street, or was ever dedicated to public use.   He
further averred that if it should be determined that the said so
called street was dedicated to public use, then the grades fixed
would damage his property.   The case was certified to the
common pleas for a jury trial, and a verdict for $8,000 was
found in his favor.   The record being certified back to the
quarter sessions, motions were made on behalf of the city and
a property owner to quash the proceeding, councils having
repealed the ordinance.   These motions were refused and the
court made an order directing a change to be made in the view-
ers' report so as to allow plaintiff $8,000 damages, and ordering
the city to pay to John Huckestein the sum of $8,000.

Plaintiff's second point was as follows :

" 2. If the jury find that the street in controversy was not
accepted by the city or public user prior to the grade ordinance
of 1890, then the city cannot complain in this case that Mr.
Huckestein made changes in the surface of the street prior to
the acceptance by that ordinance, but the city took it as it was
then.   *Answer :* Affirmed.   If the public has obtained no right

to this street—no fixed, vested right prior to this ordinance, then Mr. Huckestein had a right to do with this street just as you and I have a right to do with any property that we may have with no street on it—right to use it, dig it up, build upon it, excavate it, and do just as we see fit to do, and the fact that a street was afterwards laid out through it after that would not affect our right to damages as affected from any-thing that we had done when owners of it free from any right in the property." [1]

*Errors assigned*, in No. 304, Oct. Term, 1894, were (1) instructions, quoting them ; (2) in submitting the case to the jury.

*Error assigned*, in No. 49, Oct. Term, 1894, was in overruling motion to quash proceedings.

*George Elphinstone*, for appellant.

*W. B. Rodgers, Thos. M. Marshall, Jr.*, with him, for appellee.

HUCKESTEIN V. ALLEGHENY CITY, APPELLANT.

OPINION BY MR. JUSTICE WILLIAMS, Jan. 7, 1895:

This case grew out of a proceeding to assess the damages to result from a proposed change of grade of Sandusky street in the city of Allegheny.

Viewers had been appointed who went upon the ground and after examination made report that little damages would be done by the proposed change. The plaintiff appealed, and the appeal was certified by the court of quarter sessions into the common pleas for trial before a jury. It was tried in October, 1892, and resulted in a very large verdict in favor of the plaintiff. The city then appealed to this court and the record is now before us. It presents a series of blunders on the part of the city that extends from one end of the proceeding to the other, and from the consequences of which it is not easy to extricate her upon the assignments of error appearing on the record. The proceedings seem to be taken under a statute that is in many respects like that considered in Wyoming Street, 137 Pa. 494. It interferes with the jurisdiction of the quarter sessions and confers on the city powers·that belong to that court. Under its provisions, when the city enters upon

the land of a citizen under the right of eminent domain, it ascertains the damages it has done him by viewers of its own selection and appointment who report to the city. The city then sits as a judicial tribunal to try its own cause, and confirms or sets aside the report against it. The judgment so entered is conclusive on the adverse party unless he flees to a court of law with sufficient speed to reach its portals before the time graciously allowed him for such flight has expired. How much of this law is valid it is not important now to consider for no assignment of error raises the question, and the city having proceeded under it is in no position to question its validity. If she has been caught in the absurd machinery she has set in motion in this case she is entitled to no sympathy; and we should feel disposed to let this verdict stand if it was not apparent that it had been rendered by the jury and sustained by the court below upon an erroneous theory.

The city councils passed an ordinance in 1890 for the purpose of " changing the grade on Sandusky street from Henderson street to Bell avenue." This was done upon the assumption that Sandusky street, at the point mentioned, was a city street and had an established grade under proceedings begun some twenty years before. The viewers were appointed by the city councils in the same ordinance, and their business was to estimate the damages to accrue from the contemplated change of grade. They were not to lay out or open a street, but to examine an existing street in order to change an existing grade. The ordinance was itself a blunder. If the street had been adopted and opened as the ordinance assumed, its grade was that of the surface as it existed when the owner laid it out on his plan of lots, long before the plaintiff acquired his title or begun his excavations; and as what was proposed was to restore substantially the grade of the surface across the plaintiff's excavation, the ordinance was a work of supererogation. The excavation was in that case a trespass, a nuisance for which the plaintiff was liable. But the plaintiff insisted on the trial that the street had never been accepted or opened by the city, and the defendant was unable to show that it had been. In this view of the case the ordinance was no less a blunder, for if there was no street on the ground there was no grade to change. The case went to the jury on the question

whether there was any street on the ground covered by the ordinance.  The learned judge instructed the jury upon what was necessary to convert a way laid down by a landowner on his plan of lots into a public street over which the city would have control.  He then submitted the question whether the way laid out across the plaintiff's land had been adopted by usage or opened by legal proceedings so as to become a city street, telling them if it had not been so adopted or opened then, whatever rights lot owners might have in this way or private road, the municipality had none, and the plaintiff, so far as the city was concerned, was at liberty to exercise all the rights of ownership over it.  He said: "Previous to this ordinance of 1890 if this property was not subject to this highway as a public street at that time, he had the right to take it away, and if that is so then that property was free, as far as he was concerned, of the incumbrance of this street as a highway which the public had accepted; then it was his property as much as if the street had never been there, and he had the right to dig it down or fill it up just as he pleased."  Upon the question so submitted the jury found that when the ordinance of 1890 was passed by councils there was no street on the ground, and at the same time they found that an attempt to change the grade of a street that had no existence would injure the plaintiff's property to the extent of eight thousand dollars.  The absurdity of such a finding requires no comment to make it apparent.  It will not do to say that the ordinance of 1890 was an acceptance of the street.  It had no such purpose.  It rested, as we have seen, upon a mistaken assumption that acceptance had taken place, that the street had been legally opened, and was therefore a city street under the care of the municipality. If this was so then the further excavation of the hillside was making the work of restoring the surface grade more difficult and expensive day by day, and the object of the councils was probably to stop the excavation and restore the grade of the original surface.

The jury have found that the assumed facts did not exist. There was no street on the ground, no grade to change.  The purpose of the ordinance becomes impossible of performance and it falls.  The city is on the horns of a dilemma.  Let it take whichever it will its ordinance was a blunder.  If the

street had been adopted and opened as was assumed, its grade was upon the surface as it was at the time of such adoption and opening, and this proceeding was unnecessary. If it had never been adopted or opened there was no street there and no grade to change and the proceeding was absurd. The plaintiff was in the same dilemma. If the city was right in its contention, he had committed a nuisance in the public highway and was entitled to no damages for the effect which its removal might have upon his property. If he was right it was impossible to change a grade upon a street that had no existence, and the folly of the city in attempting to do so could give him no right of action. It might compel him, as it did, to show the facts and to incur expenses therein. These he had a right to recover. The first assignment of error is not sustained. The portion of the charge embodied therein is free from error.

The second assignment may afford room to correct the one mistake made at the trial. The case had to go to the jury upon the question raised by the plaintiff over the existence of a public street on the ground, but the jury should have been instructed, in case they found with the plaintiff upon this question, that damages could not be recovered for an attempt to change that which had no existence. An effort to do an impossible thing could inflict no greater injury on the plaintiff than the costs and expenses to which the effort might subject him.

The judgment appealed from is reversed and the record remitted that the court may fix an allowance for counsel fees for the plaintiff and tax the costs. If these are paid no venire facias de novo will be awarded. If not paid, application can be made to us for such writ.

ALLEGHENY CITY'S APPEAL.

Opinion by Mr. Justice Williams, Jan. 7, 1895 :

The case of Huckestein v. The City of Allegheny, in which an opinion has just been filed, practically disposes of this case. The judgment rendered in the court of common pleas in favor of Huckestein has been reversed for reasons that are fatal to the plaintiff's claim, and there is now no good reason why the city should not be allowed to correct its mistakes and be relieved from their consequences so far as Sandusky street is concerned, upon the payment of the costs and expenses they have

compelled the plaintiff to incur. These it should pay. Upon their payment, the city having repealed the ordinance of 1890, should be allowed to discontinue its proceedings taken under it to assess the damages done by the proposed change of grade.

The order appealed from is now reversed and the record remitted that the court below may make a proper allowance to Huckestein for costs and expenses, and upon payment of the same by the city, permit the proceedings for the assessment of damages to be withdrawn.