# Speer *v.* Monongahela Railroad Co., Appellant (No. 1).

*Eminent domain—Railroads—Adoption of line—Failure to make compensation or give security—Right to abandon—Property owner's rights—Judgment for defendant n. o. v.*

1. A railroad company after adopting and locating its line has the right to abandon the route, before any actual entry upon the land has been made for construction purposes and prior to the filing of a bond to secure the payment of damages. Until compensation is paid or security given no title is vested in the condemnor.

2. The successive steps contemplated by the Act of February 19, 1849, P. L. 79, and subsequent legislation in order to vest title in a railroad in eminent domain proceedings are (1) a preliminary entry on the lands of private owners for the purpose of exploration; (2) the selection and adoption of the line for the location of the proposed railroad; (3) payment to the owner for what is taken and the consequences of the taking, or security that it shall be made when the amount due him is legally ascertained. The title of the owner is not divested until the last of these steps has been taken.

3. The remedy for an entry by a railroad company upon lands without the consent of the owner and without making compensation, or securing its payment, is by a bill in equity for injunction, or an action of trespass, and not by petition for the appointment of viewers.

4. In proceedings instituted by a property owner, for the assessment of damages caused by the location of two railroad routes over the plaintiff's land, it appeared that the railroad had never taken actual possession or given security for the payment of damages, but had abandoned such routes. The lower court submitted the case to the jury which found a verdict for plaintiff upon which judgment was entered. *Held,* that the title to the rights of way had never vested in the railroad company, and that plaintiff was not entitled to recover, and the judgment was reversed.

Argued May 8, 1916. Appeal, No. 420, Jan. T., 1915, by defendant, from judgment of C. P. Fayette Co., Sept. T., 1911, No. 311, on verdict for plaintiff in case of Louise Dawson Speer, Administratrix d. b. n. c. t. a. of Charles E. Speer, deceased, v. Monongahela Railroad Company.

Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Appeal from award of viewers. Before VAN SWEAR-INGEN, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $15,333.33 1-3 and judgment thereon. Defendant appealed.

*Errors assigned* were, among others, (1) in refusing defendant's motion for judgment n. o. v., (2, 3) refusing to direct a verdict for the defendant, and (4) the charge of the court.

*W. J. Sturgis,* with him *S. J. Morrow,* for appellant. —The railroad company had the right to abandon the routes where it had taken no actual possession of the land and had not given security for the payment of damages: Dilts v. Plumville R. R. Co., 222 Pa. 516; Fischer v. Catawissa R. R. Co. & Philadelphia & Reading R. R. Co., 175 Pa. 554; Wood v. Trustees of State Hospital for Insane, 164 Pa. 159; Graham v. Pittsburgh & Lake Erie R. R. Co., 145 Pa. 504.

*E. C. Higbee,* of *Higbee, Sterling & Matthews,* with him *F. P. Rush,* of *Johnson & Rush,* for appellee.

OPINION BY MR. JUSTICE POTTER, October 2, 1916:

This is an appeal from the judgment of the court below, rendered after verdict upon the trial of an appeal from an award of viewers appointed to assess damages resulting from certain steps taken by the defendant company in partial exercise of its right of eminent domain.

It appears from the record that, on January 3, 1901, Charles E. Speer was the owner of the undivided two-thirds of a tract of land in Fayette County, containing some 537 acres. His wife, Sarah Dawson Speer, was the owner of the other undivided one-third of the land.

Upon the date in question, January 3, 1901, the defendant company located, and subsequently adopted, a route for its railroad across the land. Charles E. Speer died on May 2, 1905, having by his last will and testament devised his interest in the land to his wife, and appointed her executrix. In December of 1909, the defendant company located and adopted a route for a branch railroad, leading from the main line previously adopted, for a distance of about 1,600 feet across the property. No bond was filed by the defendant company, however, and no possession of the property was ever taken by it. On January 7, 1910, before these proceedings were instituted, Sarah Dawson Speer conveyed the land in question to J. V. Thompson by a deed containing no reference to the right to damages in the eminent domain proceedings. Subsequently, on July 31, 1911, as executrix of Charles E. Speer, she filed a petition for the appointment of viewers. She died on or before May 15, 1912, and Louise Dawson Speer, administratrix d. b. n. c. t. a. was substituted as plaintiff. At the same time that Sarah Dawson Speer filed her petition as executrix of Charles E. Speer, she filed a similar petition in her own right for the appointment of viewers to assess damages to the one-third undivided interest which she owned in the land, at the dates of the locations of 1901 and 1909. On May 7, 1912, these locations were abandoned by formal action of the board of directors of the defendant company. The court below was, however, of the opinion that the petitioners were entitled to the appointment of viewers. The same persons were appointed in each case, the views were held together, and, on appeal from the award of the viewers, the two cases were tried at the same time before the same jury. In his charge, the trial judge summarized the facts, and the contention of appellant, as follows: "In 1911 and 1912, on another and different location through part of this property, a railroad was actually constructed, and is now in operation, with the consent of J. V. Thompson

who owned the property at that time. It is contended
on the part of the defendant that, inasmuch as no rail-
road ever was built on either the route laid out for a
main line in 1901, or on that laid out for a branch line in
1909, but that both routes were abandoned in the regular
way by the defendant company, the company is not liable
in these actions for damages to the plaintiff."

The trial judge affirmed a point presented by counsel
for plaintiff, which assumed that the right to damages
had vested in the owners of the property at the time of
the location of 1901, and refused the following point,
presented by counsel for defendant: "It appearing that,
before any action had been taken by the Court of Com-
mon Pleas, upon the petition for the appointment of
viewers, and on May 7, 1912, the board of directors of the
defendant company, by resolution duly adopted, aban-
doned the location of 1901, without having entered upon
the land for the purpose of constructing its railroad, and
without having tendered or filed any bond or bonds to
secure the damages to the landowner the railroad com-
pany had the right to abandon its location and your ver-
dict should be for the defendant." -

The refusal of this point is made the subject of the
third assignment of error, and the fundamental question
in this appeal is thereby raised. That question is,
whether the railroad company, after adopting and locat-
ing its line, had the right to abandon the route, before
any entry upon the land had been made for construction
purposes, and prior to the filing of a bond to secure the
payment of damages. If the railroad had at that time
the right to abandon the location, there was no basis for
these proceedings, and the discussion as to whether the
proper parties acted, becomes immaterial.

In the exercise of the power of eminent domain by mu-
nicipal corporations, the right to discontinue has been
liberally sustained. In Funk's Admrs. v. Waynesboro
School Dist., 3 Sad. 177, 18 W. N. C. 447, we held as set
forth in the syllabus: "In proceedings for the taking of

land for school purposes, under the Act of April 9, 1867, P. L. 51, where there has been no actual or permanent taking of the land, the petitioners may withdraw all proceedings at any time before final confirmation of the report of viewers." And in Moravian Seminary v. Bethlehem Boro., 153 Pa. 583, 588, it was held that in condemnation proceedings the court has power to authorize a discontinuance, on proper and adequate terms, at any time before judgment, even after a verdict on appeal. Again in Huckestein v. Allegheny City, 165 Pa. 367, it was held that where a city undertakes to change the grade of a supposed street, and it afterwards appears that the street has never been opened or adopted by the city, proceedings to assess damages may be discontinued after verdict and judgment. In Franklin Street, 14 Pa. Superior Ct. 403, it was held that condemnation proceedings by a municipality might be discontinued even after a bond had been filed and notice given to property owners to remove. In this case RICE, P. J., said (p. 411) : "It is safe to say, in general, that the courts have been careful not to lay down a rule upon this subject which will prevent municipal corporations from receding from proposed action of this kind before the landowner has obtained final judgment for his damages, unless the corporation has in the meantime taken actual possession of the land. See generally upon this subject, Elliott on Roads and Streets, 209, 280, and 2 Dillon's Mun. Corp. sec. 608. It is proper that this view should be taken. The public good, or the inability of the treasury to fairly bear the burdens, may require that it should recede, and if the landowner is fully compensated for the actual injury he has sustained, no injustice is done in permitting the municipality to do so." But in Myers et al. v. South Bethlehem Boro., 149 Pa. 85, it was held that, after final judgment in condemnation proceedings, a municipality cannot discontinue.

In Wood v. Trustees of State Hospital for Insane at Warren, Pa., 164 Pa. 159, it was held that, after posses-

sion of the land has been actually taken, the proceedings cannot be discontinued and possession abandoned. Mr. Chief Justice STERRETT said (p. 169) : "If, in the face of their unequivocal acts and declarations, defendants had a right to discontinue, and had been permitted to do so, there would have been nothing to prevent them from inaugurating new proceedings, and in like manner withdrawing therefrom; and thus they might commence and abandon new proceedings from time to time with the view of obtaining an award that would be satisfactory to themselves. Corporations and others invested with the power of eminent domain should not be permitted to thus experiment with judicial proceedings for any such purpose. Whenever it clearly appears, as it does in this case, that there has been such an actual taking under the power of eminent domain, as invests the donee of the power with title, and gives to the landowner a vested right to compensation, the former should not be permitted to discontinue without the consent of the latter. Any other rule would be productive of oppression and other mischievous results." In that case, it appeared that the hospital was a State institution, with the right of eminent domain, and that the State became security for all damages to the owner of the property taken. The premises were appropriated, entered upon, and actually occupied for hospital purposes. It was held that such occupancy constituted a permanent taking which invested the trustees with title to the land, and gave to the owner a vested right to compensation.

In Fischer v. Catawissa R. R. Co. and Philadelphia & Reading R. R. Co., 175 Pa. 554, it was held that after a railroad had filed its bond in condemnation proceedings and had entered into possession, it was too late to discontinue. Mr. Chief Justice STERRETT said (p. 558) : "The effect of the proceedings deliberately instituted by one of the defendants, including the approval and filing of the bond, appointment of viewers, etc., was to divest plaintiff's right of the possession of the land taken, and remit

him to his claim for compensation, under the Constitution, secured by the bond, etc. Not only had a divestiture of plaintiff's right of possession been effected, but, after the approval and filing of the bond, defendants were in the actual and rightful possession of the land in question. Under all our decisions it was then too late to discontinue the proceedings: Wood v. Trustees of State Hospital for Insane, Warren, Pa., 164 Pa. 159; Williamsport & North Branch R. R. Co. v. Philadelphia & Erie R. R. Co., 141 Pa. 407, and cases there cited."

We know of no case in this State, where the land has not been actually occupied, in which it has been held that a railroad may not abandon a right of way, if it chooses to do so, before compensation has been paid, or secured by the filing of a bond.

Our constitutional provision clearly makes the payment or securing of compensation the turning point in the transfer of title. Article XVI, Section 8, of the Constitution of Pennsylvania, provides that "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction......".

Until compensation is paid or secured, no title vests in the condemnor. If it enters upon the land for the purposes of construction before compensation has been made or secured, it is a trespasser and as such may be enjoined from proceeding. "Before payment or security, it is clear that the entry is tortious and not rightful": Western Penna. R. R. Co. v. Johnston, 59 Pa. 290. The remedy for an entry by a railroad company upon land, without the consent of the owner, and without making compensation, or securing its payment, is by an action of trespass, and not by petition for the appointment of

viewers: Mountz v. Philadelphia, Harrisburg & Pittsburgh R. R. Co., 203 Pa. 128.

In Fries v. Southern Penna. R. R. & Mining Co., 85 Pa. 73, it was said (p. 75): "The security being given in due course of law, the grasp of the owner upon his property is loosened by the Constitution itself." It is evident that until the security has been given, the grasp of the owner is not loosened, and the title to his property remains in him. In Williamsport & North Branch R. R. Co. v. Philadelphia & Erie R. R. Co., 141 Pa. 407, it was pointed out that three successive steps are contemplated by the Act of February 19, 1849, P. L. 79, and subsequent legislation, in order to vest title to the roadway in the corporation. These are: (1) A preliminary entry on the lands of private owners for the purpose of exploration. (2) The selection and adoption of a line for the location of the proposed railroad. (3) "Payment to the owner for what is taken, and the consequences of the taking, or security that it shall be made when the amount due him is legally ascertained. The title of the owner is not divested until the last of these steps has been taken: Levering v. Philadelphia, Germantown & Norristown R. R. Co., 8 W. & S. 459; McClinton v. Pittsburgh, Ft. Wayne & Chicago Ry. Co., 66 Pa. 404; Dimmick v. Brodhead, 75 Pa. 464; Buffalo, N. Y. & Philadelphia R. R. Co. v. Harvey, 107 Pa. 319; Gilmore v. Pittsburgh, Va. & Charleston R. R. Co., 104 Pa. 275. As against him, the corporation can acquire only a conditional title by its act of location, which ripens into an absolute one upon making compensation." Of course, a railroad company, after the right of way has been located by its directors, upon preliminary surveys, may agree with the landowner as to the amount of the damages, and, when they are paid, the title vests at once in the company: Templeton v. Wilkes-Barre Coal Co., 50 Pa. Superior Ct. 341. Doubtless, also, the landowner may waive the filing of a bond, and permit the proceedings for the assessment of damages to go on. In such case, payment of the dam-

ages would vest the title. In any event, there must be reciprocity of right between the owner and the railroad. While the owner retains title, he cannot ask payment as though it had been transferred. So long as he has the right to treat the railroad as a trespasser, it must have the reciprocal right to abandon its location, and withdraw all claim thereto. For any possible damages that the owner may have suffered in the meantime, his remedy, as indicated above, is by an action of trespass.

While there is diversity in the practice in the various states, with respect to the right to discontinue proceedings in eminent domain, before completion, it is stated in 30 Amer. & Eng. Anno. Cases, 1062, that "In the absence of a statute fixing the time when a discontinuance may be had, the general rule is unquestioned that an eminent domain proceeding may be discontinued at any time before the rights of the parties have become reciprocally vested."

We are, therefore, of opinion that, as in this case there was no occupancy of the land by the railroad, and no entry thereupon by it for purposes of construction, and as the location was formally abandoned before viewers were appointed to assess damages, and before any bond had been filed to secure payment of compensation, title to the land did not pass to the railroad, no reciprocal right to damages became vested in the landowners, and there was no right of recovery in this proceeding.

The first, second, third and fourth assignments of error are sustained, and the judgment is reversed.