Reinbold *v.* Commonwealth, Appellant.

Argued May 27, 1935. Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

34

*Thomas W. Bender,* Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, and *Gideon R. Light,* for appellant.

*Eugene D. Siegrist,* with him *Morgan D. Reinbold* and *C. V. Henry, Jr.,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, June 29, 1935:

The procedings in this case were instituted by a petition filed in the court below by the department of property and supplies of the Commonwealth, agreeably to the provisions of the Act of July 15, 1919, P. L. 976, and the Administrative Code of April 9, 1929, clause (f), section 2402, P. L. 177, 306, as amended by so much of section 1 of the Act of June 1, 1931, P. L. 350, 371, as refers thereto, asking for the appointment of viewers to determine and report upon the fair value of two tracts of land belonging to the plaintiff, Josiah A. Reinbold, situate in East Hanover Township, Lebanon County, and containing 517 acres and 37 perches of land. It was averred that the land was "needed for the purpose of a new military reservation in the Commonwealth."

The viewers were duly appointed and ultimately reported that the land was worth $13,775, and awarded that sum to plaintiff "as compensation for the taking of said land."

Alleging that the "award of the viewers is excessive, unjust and unreasonable," the Commonwealth, through its department of property and supplies, appealed there-

from and demanded "that the lawful damages caused by the taking of said land and the just and lawful compensation to be paid therefor, shall be determined by the court, according to the course of the common law, in accordance with the provisions of the Constitution of the Commonwealth of Pennsylvania and the acts of assembly in such case made and provided." Thereupon an issue was framed by the court below "that a trial shall be had upon the question of the value of [said] property. In said issue the said Josiah A. Reinbold shall be plaintiff and the said Commonwealth of Pennsylvania shall be defendant."

The trial was duly had, both parties appearing and producing evidence. It resulted in a verdict for plaintiff in "the sum of $28,711.43, with interest from May 9, 1934, and costs of suit." The next day the Commonwealth filed a motion and reasons for a new trial. Some four months later, and while the motion for a new trial was pending and undetermined, the Commonwealth, through its department of property and supplies, filed a petition for leave to discontinue the condemnation proceedings. To this plaintiff filed an answer, and to it, in turn, the Commonwealth filed a replication.

Subsequently the motion for a new trial was discharged and that for leave to discontinue the condemnation proceedings was dismissed; judgment was entered on the verdict, and this appeal by the Commonwealth followed. There are fifteen assignments of error, but, in the view we take of the appeal, we need consider only the one which complains of the refusal of the court below to allow the Commonwealth to discontinue the condemnation proceedings.

In nearly all the states of this country, it is declared that condemnation proceedings begun by any public authority, may be discontinued as of course if application so to do is made at a proper time, the uncertain question being—Until what time? Generally speaking, the answer to this question is determined by the applicable statutory provisions of the particular states, but in none of

them does it seem to be doubted that the discontinuance should be allowed if seasonably applied for. It is not necessary, on this appeal, to consider the differing statutes, but those interested in that subject will find the decisions of the several states construing their relevant statutes, set forth at some length in a note to the case of Cunningham v. Memphis R. R. Terminal Co., 30 Am. & Eng. Annotated Cases 1062, where, before dealing with the varying rules in the separate jurisdictions, it is stated that: "In the absence of a statute fixing the time within which a discontinuance may be had, the general rule is unquestioned that an eminent domain proceeding may be discontinued at any time before the rights of the parties have become reciprocally vested."

In 2 Lewis on Eminent Domain (3d ed.), section 955, it is said: "The weight of authority undoubtedly is that, in the absence of statutory provisions on the question, the effect of proceedings for condemnation is simply to fix the price at which the party condemning can take the property sought, and that even after confirmation or judgment the purpose of taking the property may be abandoned without incurring any liability to pay the damages awarded." As will be shown hereinafter, the latter statement is somewhat broader than the rule which obtains in this State.

Many cases are cited by Lewis, however, as bearing out the statement quoted, among them being O'Neill v. Freeholders of Hudson, 41 N. J. L. 161, 172, 173, where, in an opinion by Chief Justice BEASLEY of the Court of Errors and Appeals of New Jersey, it is said that "whenever land is sought to be taken for a public purpose, the public authorities, in the absence of any statutory provision to the contrary, have a reasonable time given them, after the ascertainment of the expense of the scheme, to decide whether to accept or refuse the land at the price fixed. On every account [he says] that rule commends itself to my judgment. With respect to the landowner, the procedure is fair and just; it calls for a reasonable

valuation of his land, and if the public reject it at such estimation, he suffers, in general, no detriment, and if, in any exceptional case, any injury is done him, he is entitled to reparation. On the other side, the rule in question is a necessity, in view of the rational conduct of public affairs: the question whether a projected improvement is wise or unwise, expedient or inexpedient, cannot be answered by any one who is ignorant of the expense that it involves, and therefore to require public agents, in handling these matters, to disregard this plain dictate of common sense, would be altogether absurd. A man of prudence relinquishes a project when he finds the cost is likely to exceed, in large measure, its benefits; it would seem intolerably unreasonable to require the agent of the public to pursue the opposite course. In construing any statute authorizing one of these undertakings, every reasonable intendment should be against reading it in a sense that would put the public in this false position. The legal effect of such acts should be held to be that they compel the landowner to offer the public the required land at the ascertained price, and that, when such price has been finally ascertained, the public has a reasonable time within which to make an election either to accept or reject the offer." In Franklin Street, 14 Pa. Superior Ct. 403, 411, in speaking of the rule that municipal corporations may discontinue at any time "before the landowner has obtained final judgment for the damages," it is said in the opinion by President Judge RICE: "It is proper that this view should be taken. The public good, or the inability of the treasury to fairly bear the burden, may require that it should recede, and if the landowner is fully compensated for the actual injury he has sustained, no injustice is done in permitting the municipality to do so."

So, too, in Dillon on Municipal Corporations (5th ed.), section 1044, it is said: "Under the language by which the power to open streets and to take private property for that purpose is usually conferred upon municipal corporations, they may, at any time *before taking possession of*

*the property under completed proceedings, or before final confirmation,* recede from or discontinue the proceedings they have instituted. This may be done, unless it is otherwise provided by legislative enactment, at any time before vested rights in others have attached. Until the assessments of damages have been made, the amount cannot be known; and on the whole it is reasonable that after having ascertained the expense of the project the corporation should have a discretion to go on with it or not, as it sees fit. [In a footnote thereto a large number of cases, from many states, are cited as bearing out the text.]

"Section 1045 . . . And it has been even held that if the municipality deems it best to abandon the proposed work or project, it may do so and discontinue proceedings, although it may have taken possession of the premises. . . .

"Section 1046 . . . But the language of the act or charter may be such as to give the landowner a right to the sum assessed, and to prevent the corporation from setting aside or discontinuing proceedings, as where it is provided that 'after the value and damages shall have been ascertained, the amount, with interest, shall be paid to the person interested, on demand.' "

So, also, in Elliott on Roads and Streets (3d ed.), it is said: "Section 307. The right to discontinue proceedings, unless the statute otherwise provides, exists as long as the amount of compensation remains undetermined, except in cases where possession has been taken or the party seeking to condemn property has so far affirmed the proceedings as to give the owner a right to treat the taking as final. It is evident that a county, township, or municipal corporation ought not to be held bound to take and pay for property required for a road or street until it knows certainly and definitely what will be required to pay for the property . . . it cannot, in reason or justice, be compelled to take the property until it is informed what compensation will be exacted, and opportunity is

afforded it to determine whether the public welfare will justify the expenditure, or the treasury will fairly bear the burden. The weight of authority sustains the view we have expressed and it will be found on investigation that much of the apparent conflict is owing to the difference in the statutes under which the cases were decided."

The question now being considered has been before this court on a number of occasions, and, while the conclusions, in the way they are stated, have not always seemed to be harmonious, this arises largely, if not entirely, from the fact that the apparently conflicting results were due to the differing statutes under which the several proceedings were had. This will appear from the following brief review of these decisions:

In Sedgeley Ave., 88 Pa. 509, we decided that "An award of damages by a road jury, under the provisions of the Act of April 1, 1864 [P. L. 206], when confirmed by the court, is a final judgment, and one for the payment of money, and the liability of the city is absolutely fixed thereby." The Act of 1864, therein construed, provides, however, that the report of the jury shall fix and award the amount of damages and benefits, and "when said award is confirmed by the court . . . the said city shall pay, to the respective owners of the property damaged, or their legal representatives, the damages so assessed for said opening." This, of course, is in effect a judgment concluding such proceedings, and upon its entry leaves the city no alternative but to pay the award. No such language appears in the relevant statutes in the instant case, and hence no such conclusion can be reached thereunder.

In Myers v. Boro. of South Bethlehem, 149 Pa. 85, plaintiff recovered a judgment for the value of land taken in the opening of a street. Subsequently the borough repealed the ordinance providing for the opening, and sought to prevent the landowner from recovering the amount of his judgment, upon the ground "that a municipal corporation invested with the power of taking prop-

erty by eminent domain may abandon and discontinue the proceedings at any time before actual possession is taken, so long as the amount of compensation remains undetermined." Recognizing the rule that such a repeal releases the condemnor from all claims that are still in fieri, the opinion proceeds (page 91) : "A judgment settles everything involved in the right to recover, not only all matters that were raised, but those which might have been raised. It is not that the borough will owe the amount if, or when, it takes the property, but that it does owe now. All questions of opening, taking, etc., are concluded by it, so far at least as the plaintiff is concerned. As regards other parties the way of retreat may still be open, but a plaintiff who has been diligent and pressed his claim to judgment should not be prejudiced by the laches of other property owners on the same street, whose claims are still pending." This case determines what is the true rule, which is not that the right to discontinue is always lost as soon as possession is taken, as the court below seemed to think; it is that the right continues until the proceedings are ended, and admittedly they were not ended in the instant case when the Commonwealth filed its petition for leave to discontinue. This matter will be more fully referred to a little later.

In Moravian Seminary v. Bethlehem, 153 Pa. 583, we had occasion to consider the effect of our opinion in Myers v. South Bethlehem Boro., supra, and said, page 588: "Speaking for the court, in that case, our Brother MITCHELL said: 'A judgment settles everything involved in the right to recover, not only matters that were raised, but those which might have been raised. It is not that the borough will owe the amount if, or when, it takes the property, but that it does owe now.' His reasons in support of the judgment in that case, as well as the authorities cited, point to the conclusion that, before judgment in favor of the plaintiff, municipal corporations, on the general principles of law in force prior to the Act of 1891, might be permitted to recede and discontinue condemna-

tion proceedings." It follows that, unless there is in this case some controlling statute on the subject—and this we will consider later herein—since there was then no "judgment in favor of the plaintiff," the court below erred in dismissing the petition to discontinue, solely because, as is alleged, the Commonwealth before the beginning of the proceedings had taken some kind of possession of the land.

In Funk's Admrs. v. Waynesboro School Dist., 18 W. N. C. 447, the school district had "begun proceedings for the taking of land for school purposes, under the Act of April 9, 1867 (P. L. 307) [and it was held that], where there had been no actual or permanent taking of the land, the petitioners could withdraw all proceedings at any time before final confirmation of the report of the viewers." This was, of course, a proper decision, in the light of the applicable statute, which provided that "if damages be awarded and the report [of the viewers] be confirmed by the said court, judgment shall be entered thereon," and so it is cited and restated in Pittsburgh's Petition, 243 Pa. 392, 399. This provision does not appear in the statutes applicable to the present case and hence the decision is not controlling here.

In Wood v. Trustees of the State Hospital, 164 Pa. 159, the proceedings were had under the Act of May 6, 1891, P. L. 43, which authorized the board of trustees of any state lunatic asylum which needed "more land for the erection of necessary buildings or other necessary hospital uses and purposes," "to enter upon and occupy adjoining lands for any of said purposes . . . and to use and occupy the same for such purposes . . . and if damages be awarded and the report be confirmed by the said court, judgment shall be entered thereon, with the right of either party to appeal and have the right to trial by jury, as in other cases of taking lands under the right of eminent domain." The opinion of the court below in that case was written by the Hon. CHARLES H. NOYES, who was then one of the ablest judges in the State. In it

he says: "The case of Funk's Admrs. v. Waynesboro School Dist., 18 W. N. C. 447 [supra], is . . . fully in point and leaves no question that the formal entry upon land and marking off and designating the land to be taken, does not so vest the title in the trustees as to prevent an abandonment of the proceedings. Neither is such an abandonment prevented by the subsequent proceedings to view and assess the damages until final judgment: Moravian Seminary v. Bethlehem, 153 Pa. 584. After a final judgment has been entered the rights of the parties are fixed, and there can be no abandonment: Myers v. South Bethlehem, 149 Pa. 85. . . . I have been unable to find any case in which the confirmation of a report of viewers nisi, or subject to appeal, has been held to have the effect ascribed to a final judgment. Myers v. South Bethlehem, supra, and the reasons given in that case by Mr. Justice MITCHELL, are wholly inapplicable to a confirmation or judgment, which is not final, but subject to an appeal. . . . The meaning of the [Act of 1891] is that if, on the report of the viewers, it be found free from exception it shall be confirmed by the court; and if no appeal be taken within the time limited by law, judgment shall be entered thereon. Thus the confirmation of the report and the judgment are not one and the same thing, but separate and successive acts." He held, however, that inasmuch as the statute gave the hospital the right of immediate possession, and when taken at once devoted the land to the use for which it was ultimately intended, and the hospital had in fact so taken and used it, it was too late to withdraw.

We affirmed the opinion of Judge NOYES saying (page 169) that "Whenever it clearly appears, as it does in this case, that there has been such an actual taking under the power of eminent domain, as invests the donee of the power with title, and gives to the landowner a vested right to compensation, the former should not be permitted to discontinue without the consent of the latter." This conclusion is affirmed in Phila. v. Com., 284 Pa. 225.

In Franklin Street, 14 Pa. Superior Ct. 403, the City of Philadelphia had passed an ordinance for the widening of the street, and subsequently was given leave to and did file a bond "to secure the damages" caused thereby. A jury of view was appointed to assess the damages, but, before any award was decided upon, the city passed an ordinance repealing the opening ordinance, whereupon "the city filed a petition for leave to discontinue." An answer was filed thereto, and, after a hearing, the petition was dismissed by the court. After the evidence was concluded, the jury filed its report awarding to John Meighan $4,500. The city then filed exceptions to the report, some of which were sustained, and the report was referred back to the jury to ascertain and report what damages, if any, were suffered by claimants, or any of them, in these proceedings, and their abandonment. The jury filed a subsequent report in conformity with this order of the court, awarding to John Meighan, among others, $1,239.70 to cover the losses which he had sustained by reason of the proceedings prior to their abandonment. He excepted, and, on his exceptions being dismissed, appealed to the Superior Court, which affirmed the court below.

In the opinion by President Judge RICE it is said: "It is safe to say, in general, that the courts have been careful not to lay down a rule upon this subject which will prevent municipal corporations from receding from proposed action of this kind before the landowner has obtained final judgment for his damages, unless the corporation has in the meantime taken actual possession of the land." This statement we quoted with approval in Speer v. Monongahela R. R. Co. (No. 1), 255 Pa. 211, 215. It must be kept steadily in mind, however, that the "actual possession of the land" there referred to is not a fugitive or temporary possession, but such a one "as invests the donee of the power with title, and gives to the landowner a vested right to compensation": Wood v. Trustees of State Hospital, 164 Pac. 159; Phila. v. Com., 284 Pa. 225,

234. This, as we have already pointed out, is likewise so expressed in Franklin Street, supra.

It seems clear, therefore, that there is nothing in our prior decisions that negatives the claim made by the Commonwealth of a right to discontinue the proceedings, and hence the only remaining question to consider is whether or not the applicable statutes compel an opposite conclusion. The statement of the court below that the Commonwealth had lost the right to discontinue is largely, if not entirely, based on a misinterpretation of the relevant statutes. The basic Act of July 15, 1919, P. L. 976, provides for the appointment of a jury of view, whenever the Commonwealth and the property owner cannot agree, with the right of either party [section 5] to "file exceptions raising questions of law or to appeal" on the coming in of their report. Section 7, which is the only one that can have even a remote bearing on the subject, provides: "The board of commissioners of public grounds and buildings *shall have the right,* upon the filing of any report of viewers, to enter upon and take possession of the property *to be acquired,* without the filing of any bond or other security, where an appropriation has been made for the purchase of such property."

Upon this provision of the statute, the opinion below is founded. It says: "Whether the State has actually taken possession of the lands in question is immaterial. The controlling fact is that the State had the right of possession." This is an erroneous conclusion. The statute says the board "shall have the right, upon the filing of any report of viewers, to enter upon and take possession of the property to be acquired," etc. It does not say the board "shall [then] enter upon and take possession of the property," nor does it say that "upon the filing of any report," the matter shall be treated as if the board had taken possession. It shall "have the right" so to do, and, if it does, doubtless the right to discontinue would then be lost. But this result would flow only from the exercise of the right, not also from a failure to exercise it. If the board

does not exercise the right "to enter upon and take possession of the property to be acquired," then the status as to that matter remains unchanged, and the result which would flow from the exercise of the right does not arise. Any other conclusion would wholly exclude from consideration the words "shall have the right," for, in that event, the statute would mean exactly the same without them as with them. This is never a permissible construction of a statute unless none other is reasonably possible: Orth & Bro. v. Board of Education, 272 Pa. 411; McFadden v. Lineweaver & Co., 297 Pa. 278; West v. Lysle, 302 Pa. 147. Directly applicable to the present situation is the opinion in Franklin Street, supra, where it is said at page 413: "We know of no case which holds that a right of entry is equivalent in effect to an actual entry and exclusion of the owner from the possession in precluding a municipal corporation from claiming the benefits of an abandonment of the proposed taking before final judgment for the landowner's damages." Nor is there any case, decided since Franklin Street, which so holds.

It is true that, in appellee's answer to appellant's petition for leave to discontinue, it is averred that the Commonwealth had taken possession, but the answer excludes the contention that it was taken by virtue of the power vested in it by the statute, for it is expressly averred therein "that at the hearing conducted by the viewers on, to wit, November 24, 1933, it was stipulated and agreed by counsel representing the respective parties . . . that the Commonwealth had taken respondent's lands as of the date of filing petition, to wit, October 20, 1933." Each of these dates was before "the filing of any report of viewers," and hence such taking of possession, if it occurred, was entirely beside such a taking as is referred to in the statute, and cannot be given the effect which might have arisen if it had been taken at the time specified and because of the authority given by the statute. If taken at the time averred by appellee it must have been submissively or by agreement, and not adversely, and hence, for

this reason also, cannot be given the effect of an adverse taking. It certainly was not "such an actual taking under the power of eminent domain as invests the donee of the power with title" : Wood v. Trustees of the State Hospital, supra.

Clause (f) of section 2402 of the Administrative Code of April 9, 1929, P. L. 177, 306, provides that "the condemnation of land hereunder shall be in the manner provided by the Act of July 15, 1919," supra, and neither adds to nor subtracts therefrom. This is so, also, as to that section, as amended by the Act of June 1, 1931, P. L. 350, 371, which neither adds to nor subtracts from the provisions of the Act of 1919, supra. Hence as the Act of 1919, on the facts here appearing, has no effect on the Commonwealth's right to discontinue, these later statutes are equally wide of the mark.

It follows that the order of the court below refusing the Commonwealth the right to discontinue the proceedings was erroneous and must be reversed, and with it must fall all the later proceedings, leading up, through the trial, to the final judgment, which must also be reversed.

The judgment of the court below is reversed, the order dismissing appellant's petition for leave to discontinue the eminent domain proceedings is also reversed, said petition is reinstated and granted, and the court below is directed to ascertain, by appropriate proceedings, the amount of costs, expenses and damages expended and suffered by appellee by reason of the intended condemnation of his land, from the date those proceedings were instituted until the time the Commonwealth applied for leave to discontinue them, and to direct the payment of such costs, expenses and damages, within such time as may be reasonable under the circumstances, the time to be designated in the decree.